NORTON D. KITCHELL, Appellant, v. THE MANCHESTER ROAD ELECTRIC RAILWAY COMPANY, Respondent.

St. Louis Court of Appeals, March 21, 1899.

**Ordinance for Construction of Street Railway: VALIDITY.** The validity of the ordinances under which the respondent constructed and operates its railroad, and the fact that it failed to complete its road within the time limited can not be raised in this kind of a suit by a private individual, unless he can show special or peculiar injury to himself; such questions concern the public generally, and not any particular individual, unless he has suffered a particular injury, and can only be raised by the state or city granting the franchise.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

JAMES M. LEWIS and CHESTER H. KRUM for appellant.

The trial court erred in refusing to permit the appellant to prove that the work, as done by the respondent, did not conform to the grade of the Manchester road, as established by ordinance 15,431. The privilege to build the road was based upon compliance with the established grade, as a condition

precedent to the exercise of the privilege. Both ordinances read in evidence—numbers 17,375 and 18,231—require that the respondent shall "cause the grade of its roadbed and tracks to conform to the now or hereafter established grade of the street over which it constructs its railroad." Ordinance 15,431, excluded by the court, established the grade as early as 1890. The ordinance and the evidence offered to show noncompliance with it, were, therefore, material and should have been permitted to be introduced. The ordinance 15,431 and evidence as to noncompliance with it, were excluded upon the theory that the city alone could complain of such noncompliance, and that the respondent was only required to lay the tracks upon the surface of the streets, as it found them, without reference to the "paper grade." This view is manifestly erroneous, because the respondent is required to grade, at its own expense, all streets upon which its tracks are laid for the full width of such streets. It is also erroneous because the appellant's house being upon grade, the theory of the bill was that the railroad track, as laid and operated, constituted a nuisance causing special damage to the property of appellant and to the occupation of such property by appellant. The court cut off the inquiry, at the outset, and thus prevented all demonstration in the attempted direction. The trial court erred in dismissing the petition in the face of the presence in evidence of ordinance 18,231, and the want of compliance, in the passage of that ordinance, with the Act of April 9, 1895, popularly known as the "Julian Law." The construction of the railroad track on the Manchester road was, alone, feasible, because of ordinance 18,231. It then became material to determine the legal effect of this ordinance. If invalid because it did not comply with the act in question, the remedy of appellant was complete on showing special damage. The action of the court, upon the other branch of the case, precluded all inquiry as to the validity of the ordinance. It

was, however, void, because of noncompliance with the "Julian Law."

McKEIGHAN, BARCLAY & WATTS, DAWSON & GARVIN and G. A. FINKELNBURG for respondent.

Any construction, either above or below the actual grade of the street, would indeed have caused an intolerable nuisance of which the public might have complained with good reason. Tate v. Railroad, 64 Mo. 151, 158; Swenson v. Lexington, 69 Mo. 157. And if an injury to private property is caused by the construction of a railroad along a public street there is an adequate remedy at law for the damages sustained; the courts will not on that account enjoin the operation of the railroad along the line of the public highway if it be a road otherwise duly authorized by law to occupy such highway. Such a case is to be distinguished from those in which the railroad seeks to take and occupy private property for its use. Hyland v. Railway Transfer Co., 10 Ky. Law Rep. 900; Lorie v. Railway, 32 Fed. Rep. 270; Lockhard v. Railway, 139 Pa. St. 419; Fulton v. Railway & Transfer Co., 85 Ky. 640; Gaus v. Railway, 113 Mo. 308. If the injury which the complainant would sustain from the acts sought to be enjoined can be fully and easily compensated at law, while on the other hand the defendant would suffer great damage and especially if the public would suffer large inconvenience if the contemplated act were restrained, the injunction ought to be refused and the complainant remitted to his action for damages. Osborne v. Railroad, 147 U. S. 248, 259; McElroy v. Kansas City, 21 Fed. Rep. 257; Gaus v. Railway, 113 Mo. 308. The attorney-general or circuit attorney is a necessary party when the act against which relief is sought affects injuriously the whole community over which the corporate jurisdiction extends. To permit single individuals thus to question the acts of governmental authorities, impede their administration and stop important public improvements, would

lead to mischief, multiplicity of suits and inextricable confusion in all public affairs. The general rule on this subject is laid down in High on Injunctions, sections 816 and 1301-1304; Bliss on Code Pleading, section 81, and see the leading case of Davis v. Mayor, 2 Duer 663, 667 (67 Am. Dec. 186); also Keary v. Andrews, 10 N. J. Eq. 70, 77, and the recent case of Borden v. Railway, 33 Atl. Rep. 276. In Missouri this doctrine has been repeatedly recognized as will appear from the following cases: Glasgow v. St. Louis, 107 Mo. 198, 204; Rude v. St. Louis, 93 Mo. 408; Cummings v. St. Louis, 90 Mo. 259, 264.

BLAND, P. J.—The plaintiff owns a lot of ground abutting on Manchester avenue in the city of St. Louis, over which defendant has constructed and is operating a street railroad. The defendant is a corporation organized under the laws of Missouri. By an ordinance passed by the municipal assembly of the city of St. Louis, numbered 17,008 and approved December 31, 1892, the defendant was authorized to construct and operate a double track railway, beginning on Manchester avenue at its intersection with the west line of King's Highway, thence extending along and on said Manchester avenue to the western limits of the city. This ordinance was amended by ordinance numbered 17,375, approved January 30, 1894, by which the defendant was authorized to build and maintain and operate its road beginning on Manchester avenue at a point west of its junction with the Old Manchester road and where the tracks of the Lindell Railway Company leaves said Manchester road, thence extending along said Manchester road to the western city limits. On December 28, 1896, the municipal assembly by ordinance number 18,231, authorized the defendant to extend its tracks and operate its road from the intersection of Manchester avenue and Sarah street, north on Sarah street to the intersection of Sarah street with the track of the St. Louis and Suburban

Railway Company. Under these ordinances the defendant is required to cause the grade of its roadbed and tracks to conform to the then or thereafter established grades of said streets over which it should construct its railroad, and at all points where its railroad crossed any of the streets of the city the defendant is required at its own expense to grade all streets upon which its tracks might be laid for the full width of said streets from building line to building line to the satisfaction of the board of public improvements of the city. The defendant was authorized under these ordinances to run its cars at a speed of fifteen miles an hour. The plaintiff filed his petition in the circuit court, praying that defendant be enjoined from operating its railroad on Manchester avenue, on the alleged grounds, first that defendant had unlawfully laid its tracks on said avenue in front of plaintiff's property, in that it had failed and refused to conform the grade of the avenue and of its roadbed to the grade established by the city and had not completed the construction of its railroad within the time limited by the ordinance authorizing it to lay said railway on said avenue; second, that ordinance number 18,231 under which defendant is proceeding to construct its railroad on Sarah street is void, for the reason it is opposed to what is commonly known as the Julian Law; third, that the ordinance under which defendant is operating its railroad is unlawful, because it authorizes the defendant to run its cars upon its tracks at "the dangerous and extremely rapid speed of fifteen miles per hour;" fourth, that the laying of defendant's tracks has already caused serious damage to the property of plaintiff and that their maintenance in the future will cause great and further damages impossible to estimate, and that the operation of said railroad on the street in front of plaintiff's property will be dangerous to life and injurious to the peace and quiet of plaintiff, and that the occupation of the said street for the purpose of defendant's railroad is an unlawful viola-

tion of the purposes to which said street was originally dedicated.

The answer admitted that defendant was a corporation, admitted the passage of the several city ordinances cited in the petition, and admitted that defendant had constructed its railroad on Manchester avenue, and that it was operating it and denied all other allegations. On a hearing the plaintiff's bill was dismissed and judgment entered for defendant, from which plaintiff appealed.

The several ordinances conferring authority on defendant to build its railroad were read in evidence. An ordinance numbered 15,431, approved February 11, 1890, establishing the grade of a great number of streets in the city of St. Louis, among which are the streets on which defendant had constructed its railroad, was offered in evidence, and excluded by the court. Appellant also offered to prove that the defendant had not graded that portion of Manchester avenue on which it had laid its tracks in conformity with the grade established by ordinance numbered 15,431, which was also excluded. Appellant also offered to prove that his lot on Manchester avenue had been graded to conform to the established city grade, which was also excluded. It is conceded that the defendant laid its tracks on Manchester avenue on the grade as it found it, and that the city had never taken any steps to have the grade of that avenue and street at points of crossing it to conform to the grade established by ordinance. In other words, the city has only made or caused to be made a paper grade, not an actual grade. The learned trial judge gave as a reason for rejecting ordinance numbered 15,431 and the proffered evidence that defendant had not graded Manchester avenue, that the defendant was not bound to grade its roadbed or the street, until the city directed the grading to be done. It seems to us that this is not only the reasonable construction of the contract between the city and the defendant company with reference to the grading, but the necessary

one, for, to grade the streets upon which the railroad is built before the grading of the streets crossing them is undertaken, would probably greatly impede, if not entirely hinder, the passage of vehicles across the graded street.    Under this view of the ordinance it was wholly immaterial whether or not appellant had graded his lot to conform to the established grade, and there was no error in excluding his evidence that he had so graded it.    The validity of the ordinances under which the respondent constructed and operates its railroad, and the fact that it failed to complete its road within the time limited, can not be raised in this kind of a suit by a private individual, unless he can show special or pecuniary injury to himself, which was not done or offered to be done by appellant; such questions concern the public generally and not any particular individual, unless he has suffered a particular injury, and can only be raised by the state or city granting the franchise.    Glasgow v. City, 107 Mo. 198; Rude v. City, 93 Mo. 408; Cummings v. City, 90 Mo. 259.    No other questions are raised by the record for decision, and we affirm the judgment.    All concur.