A. R. PARSONS *et al.*, Plaintiffs-Appellants, *v.* DANIEL L. WALKER, Governor, *et al.*, Defendants-Appellees.

(No. 12438;

Fourth District—May 22, 1975.

George M. Covington, of Chicago, and Kenneth E. Baughman, of Monticello (Steven N. Klein, of Environmental Lawyers Clinic, of counsel), for appellants.

William J. Scott, Attorney General, of Springfield, and Franklin, Flynn & Palmer, of Champaign (Jeffrey C. Taylor, Assistant Attorney General, and John L. Franklin and Charles L. Palmer, of counsel), for appellees.

Mr. PRESIDING JUSTICE SIMKINS delivered the opinion of the court:

Plaintiffs, citizens of Piatt County, appeal from the dismissal of their first amended complaint seeking to enjoin the governor and other State officials and the trustees of the University of Illinois from entering into agreements with the United States government which would allegedly set into motion the construction of the Oakley Reservoir project on the Sangamon River. The plaintiffs present as issues: Whether the complaint stated a cause of action under article XI of the Illinois Constitution giving all citizens the right to a healthful environment; whether plaintiffs as citizens have a cause of action against the University of Illinois officials for breach of a public trust by their action regarding Allerton Park; and whether plaintiffs have stated a cause of action under the Environmental Protection Act. (Ill. Rev. Stat. 1973, ch. 111½, par. 1001 *et seq.*) The trial court granted defendants' motion to dismiss plaintiffs' complaint and the issue here is whether that complaint stated a cause of action.

The Oakley Reservoir project was authorized by Congress in 1962. It is a fair summary of applicable Federal law to say that after a flood control project is authorized, before any appropriations may be expended on construction, the State or responsible local governmental bodies must offer formal assurances to the Secretary of the Army that they will provide the necessary cooperation, and if such assurances are not given within 5 years after written request, the project is automatically deauthorized. (Flood Control Act, 33 U.S.C. § 701(c); Flood Control Act of 1970, 42 U.S.C. § 1962d-5b(a); Water Supply Act of 1958, 43 U.S.C. § 390b(b).) On May 29, 1969, some of the defendants entered into a "Memorandum of Agreement" agreeing to serve as local sponsor and

provide the non-federal interest and assurances, with the University of Illinois agreeing to support "actively and strongly development of the project and to participate in efforts to reinstitute regional support for the project." On July 8, 1970, the Illinois General Assembly appropriated $75,000 for planning and data gathering in connection with the project. On May 26, 1971, the director of the Illinois Department of Public Works, pursuant to the above legislation, entered into an "Assurance of Local Cooperation," stating in essence that the State of Illinois sought to furnish all assurance satisfactory to the Federal government that it would provide necessary items of local cooperation and reciting a list of things which the state assured that it would perform.

After plaintiffs' original seven-count complaint was dismissed, the first amended complaint was filed incorporating those seven and adding two more counts. Briefly stated, Counts I and II alleged as grounds for an injunction that the defendant did not comply with procedures outlined in the Environmental Protection Act; Counts III and VIII are based on damage to an alleged property interest, with Count VIII expounding on the specific damages foreseen by plaintiffs by the construction of the reservoir; Counts IV and IX seek the injunction to reserve Allerton Park from destruction by the Oakley Reservoir project, again the later added Count IX particularizing the elements of destruction contemplated; Counts V and VI alleged that defendants have improperly spent Illinois tax money in dealing with the Federal Government in relation to the project, and that for defendants to enter into any future agreements with the Federal Government would be in violation of the separation of powers doctrine because the legislature must specifically determine every expenditure. Count VII appears to have been waived by the plaintiffs in the circuit court. In general, the complaint alleged that the proposed actions of defendants would irreparably damage the healthful environment of the plaintiffs, in violation of article XI, section 1, of the Illinois Constitution; that the proposed actions would result in the flooding and destruction of Allerton Park, a public park held in trust by the University of Illinois, thereby constituting a violation of a public trust by defendants; and, in addition, that the proposed actions of defendants would violate the Illinois Environmental Protection Act and the public policy of the State as expressed in that statutory provision, as well as article XI of the 1970 Constitution.

Defendants did not deny the allegations, but filed motions to dismiss on the grounds the plaintiffs had failed to state a cause of action. The trial court granted the motion to dismiss, saying that plaintiffs had not stated a cause of action under article XI of the Constitution because they were unable to provide specific medical or chemical evidence of the

alleged danger to a healthful environment until such plans were final-
ized, and that plaintiffs had failed to state in what factual way their
healthful environment would be damaged. In addition, the court found
that the plaintiffs did not have standing to sue to prevent the destruction
of Allerton Park because the park was held as a "charitable trust" rather
than a "public trust" and that only the attorney general could bring an
action for the enforcement of a charitable trust. The court said that if
the injunction were granted now it would prevent plans and specifica-
tions "of sufficient detail" to allow the Environmental Protection Agency
to make intelligent decisions. The court found that section 43 of the
Environmental Protection Act was a reasonable limitation on the public
right to sue to protect the environment as contemplated by article XI,
section 2 of the Constitution. The court further found that section 45 of
the Environmental Protection Act giving plaintiffs access to the court
to enforce the provisions of that Act did not apply since no complaint
had ever been filed with the Environmental Protection Agency. In
general, the court found that the plaintiffs had pleaded conclusions as
to damage which might result in the future rather than facts. As to the
University of Illinois' action with regard to Allerton Park, the court
found the same prematurity problems and also pointed out that the
indenture establishing the park gave the trustees power to sell with
consent of particular officials and excused the other restrictions if gov-
ernmental action (rather than private) affected the land.

Article XI of the 1970 Illinois Constitution provides in section 1 that
it is the public policy of the State and the duty of each person to pro-
vide and maintain a healthful environment. Section 2 of the article states
that "Each person has the right to a healthful environment. Each person
may enforce this right against any party, governmental or private,
through appropriate legal proceedings subject to reasonable limitation
and regulation as the General Assembly may provide by law." The
Committee on General Government Comments state that section 2
eliminates the judicially imposed restrictions that individuals have suf-
fered "special damage" in order to have standing to bring action to pro-
tect the environment. Plaintiffs contend that not only does this give
them standing to seek the injunction in this suit, but also it has given
them a cause of action. Defendants contend that the Environmental
Protection Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1001 *et seq.*) con-
stitutes the "appropriate legal proceedings" and "reasonable limitation
and regulation" of the General Assembly referred to in section 2 of the
Constitution, and that at best, plaintiffs' action for an injunction is pre-
mature because plaintiffs have not exhausted the remedies provided by
the Environmental Protection Act. If the plaintiffs were only seeking an

injunction because of violation of the Environmental Protection Act, then it seems clear that section 45(b) requires them to have first proceeded under section 31 and reached an unfavorable conclusion. The counts founded on alleged violations of the Environmental Protection Act were properly dismissed for failure to exhaust that remedy.

■■ As to the injunctions sought to prevent defendants from entering more agreements or cooperating further with the Federal government, the initial problem is the sufficiency of such a complaint for an injunction due to the stringent requirements for this extraordinary remedy. It is well established that an injunction is an exceptional remedy which is not granted as a matter of course, but with great caution and only when plaintiff's right to such relief is clearly established. (*Miollis v. Schneider,* 77 Ill.App.2d 420, 222 N.E.2d 715.) Among the general requirements when an injunction is sought are that the complaint state essential facts showing the plaintiff's cause of action (*Illinois Pure Water Committee, Inc. v. Yoder,* 6 Ill.App.3d 659, 286 N.E.2d 155), and the facts alleged must establish that if the acts of the defendant are not enjoined, substantial injury will result to the plaintiff. (*McGinty v. Skoog Construction Co.,* 52 Ill.App.2d 456, 202 N.E.2d 112 (abstract opinion).) It is not sufficient to allege injury or a mere apprehension or fear of injury, but rather the complaint must show that defendant has actually done or threatened to do the act sought to be enjoined and that is wrongful or unauthorized if by a public official. *Sheehan v. Holzman,* 52 Ill.App.2d 88, 201 N.E.2d 548.

Plaintiffs argue that an injunction is intended to allow an anticipated injury to be prevented and contend that their complaint was as specific as possible under the circumstances, conceding that they did not know precisely when the preliminary planning would end and actual construction begin, but foreseeing immediate and irreparable damage from the project's commencement they sought to prevent the beginning of a clear threat to elements of nature which could not be restored once destroyed even if plaintiffs should prevail at a later time. The defendants contend that the requirements for an injunction are not met, primarily because no immediate harm was shown nor did plaintiffs show a lack of other remedies. The defendants reject the implication that if the State does anything further, the project will commence immediately, and state that they have made only initial assurances to the Federal government with more steps required before the plans are finalized and that in the future other remedies will become available to the plaintiffs.

It appears that plaintiffs' action for injunction against the governor and State officials is premature in that no action of those defendants is alleged to be imminent which would cause damage to the plaintiffs.

Section 2 of the Environmental Protection Act provides that the Environmental Protection Agency is primarily responsible in environmental areas. Section 47(c) requires plans and specifications for any proposed installation which may violate the Act to be submitted, and under the Act plaintiffs have the opportunity to file a complaint (section 31(b)) obtain a hearing (section 41; section 45(b)), obtain an injunction if warranted (section 43), and appeal an adverse ruling directly to the appellate court or file suit in the circuit court (section 41 and section 45(b)). It appears that before construction of the feared Oakley Reservoir project could begin that under Federal law a plan must be submitted to and considered by the National Environmental Protection Agency (42 U.S.C.A. § 4332) and as mentioned above, under the Illinois Environmental Protection Act, if the State is participating, a plan must be submitted to the State Environmental Protection Agency (section 47). Nothing in the record indicates that either has been done or that the plans are even so far finalized as to enable any agency to consider them. The agreements and memoranda already entered into were essentially preliminary and apparently the agreements plaintiffs seek to enjoin would only finalize the planning stage. The complaint contains only conclusions as to danger which might ultimately occur if the defendants continue to cooperate with the Federal government. It is therefore premature in two senses—plaintiffs have not exhausted their administrative remedies, and until plans are finalized and specifications drawn, the plaintiffs are only speculating about possible harm to the environment. The only ground against the governor and other State officials which could be valid is if merely entering into the preliminary agreement without consulting the Environmental Protection Agency violated the Environmental Protection Act, and such does not appear to be the case.

Plaintiffs' supplemental brief filed after regular briefing and oral arguments concerning whether what defendants have done or are about to do are prerequisites to the Federal government beginning construction implies that what the defendants have already done has enabled the Federal government to proceed at will, and if that is so, the proper remedy would be an injunction against the Federal government. Conversely, this suit implies that the State must enter into further agreements and give more assurances to enable the project to proceed although plaintiffs fail to state in particularity what the defendants are about to do which must be enjoined.

■■ The foregoing reasoning supports the trial court's granting of defendants' motion to dismiss the complaint for an injunction as to each count except Count IX, in that all share the defects of failing to state what specific acts of defendants constitute substantial imminent danger

to particular interests of plaintiffs and that other remedies such as the Environmental Protection Act procedures were exhausted or unavailable. In essence, those counts sought to enjoin the State officials from doing whatever will facilitate the Federal government in its preparations to construct the Oakley project. Although the defendants argue that the same reasoning applies to Count IX against the trustees of the University of Illinois regarding Allerton Park, the circumstances in that matter are different, and a more direct threat is seen by plaintiffs. The basis of plaintiffs' complaint against the trustees of the University of Illinois is that the defendants' proposed actions with regard to Allerton Park constitute a violation of a public trust by the defendants. The trial court dismissed Count IX along with the others for failure to state a cause of action and prematurity in that it was not shown that the trustees were about to do anything which would immediately result in damage to Allerton Park, but only that they had entered into agreements in preparation for the project. In addition, the trial court found that the plaintiffs did not have standing to prevent the destruction of Allerton Park because it is held in "charitable trust" and not a "public trust" and only the attorney general may bring an action for the enforcement of a "charitable trust."

In 1946, Robert Allerton conveyed the property known as Allerton Park to the University of Illinois in trust with terms and conditions for the maintenance of the park. The trustees were "to have and to hold the said property upon the following charitable trust, terms and conditions, viz:  *  *  *  The Woodland Property shall be used, maintained, preserved, operated, improved and developed by the Grantee for educational and research purposes, as a forest, wild and plant-life reserve, as an example of landscape gardening and as a public park.  *  *  *  The Grantee may carry on such educational and research activities on the Woodland Property as the Grantee in its sole discretion, may deem desirable.  *  *  *  The trees on the Woodland Property shall be well cared for and cultivated to the end that the forest thereon will be preserved." These brief excerpts from the rather lengthy instrument clearly indicate the intention of the grantor that Allerton Park with its native forest be preserved for scientific and educational purposes as well as for the enjoyment of the public. Defendants point out three provisions of the trust indenture: That educational and research activities were to be within the sole discretion of the grantee, that the grantee was excused from performance by acts of God or acts of the government, and that it was a charitable trust. However, voluntarily seeking to further the destruction of part of the natural forest by the reservoir would not seem to constitute either educational or research activities, and likewise

the voluntary affirmative cooperation would not be excused as an unavoidable incident of governmental activity.

It is the charitable-public trust dischotomy on which the defendants most rely and with which the trial court agreed. The rationale is said to be that a public trust exists when a governmental unit by its own action devotes property to a particular use and thereafter attempts to change that use, in which case private citizens have standing to object. According to defendants' definition, a charitable trust exists when an individual donates land for a particular use, without initial government action, in which case only the attorney general as representative of the people has standing to object when the government-trustee later attempts to divert that property to another use. We believe the defendants are exaggerating the distinction between the two terms, if indeed there is any at all. In the instant case, the defendant Board of Trustees of the University of Illinois accepted Allerton Park in trust upon the terms and conditions set forth and have operated the park pursuant to the terms and conditions for 28 years. The defendants find a distinction between the appellate court holding in *Art Institute v. Castle,* 9 Ill.App.2d 473, 133 N.E.2d 748, holding that a trust established by an individual to be used exclusively for the erection of statues in public places was a charitable trust which could only be enforced in court by the attorney general, as opposed to the supreme court case of *Paepcke v. Public Building Com.,* 46 Ill.2d 330, 263 N.E.2d 11, where it was held that land dedicated by the State for use as public parks was held in trust for the public and no special damages need be alleged to prove by private citizens to establish standing in an action to enjoin alleged misuse of that property. The defendants seem to feel that because the supreme court in *Paepcke* did not specifically mention the *Art Institute* case that reading those two opinions together supports their contention that there is a strict line between charitable trusts and public trusts. However, even the *Art Institute* case cannot fairly be said to establish such a distinction, saying that the law in Illinois does not allow anyone other than the attorney general "to appear in court to enforce a charitable or public trust * * *" thus holding that whatever the trust was called in that case, the plaintiffs who were builders of statues from another State were not entitled to bring suit in Illinois to protect property dedicated to the building of statues in Illinois. The phrase quoted above seems to use the terms interchangeably.

*Paepcke* does not mention the *Art Institute* case, nor does it support or reject the public trust-charitable trust distinction. Rather, that opinion makes it clear that *Droste v. Kerner,* 34 Ill.2d 495, 217 N.E.2d 73, is no longer law so far as it held that a citizen or taxpayer lacked standing

to enjoin an alleged misuse of property held in trust for the public without establishing that he will suffer a special damage. The supreme court in *Paepcke* said, "If the 'public trust' doctrine is to have any meaning or vitality at all, the members of the public, at least taxpayers who are the beneficiaries of that trust, must have the right and standing to enforce it. To tell them that they must wait upon governmental action is often an effectual denial of the right for all time." 46 Ill.2d 330, 341.

■■ As was noted above, the *Art Institute* opinion appeared to use the terms "public trust" and "charitable trust" interchangeably and even if there is more than a semantic difference, when categorizing a particular trust for purposes of determining whether members of the public have standing to seek its preservation, the circumstances would dictate rather than a label attached at some time in the past. In the instant case, Allerton Park was originally conveyed by a private individual by deed, at one point referring to it as a charitable trust. The trustees of the University of Illinois accepted the trust and have abided by its terms, operating the park for the public as well as scientific and educational uses for 28 years. Therefore, there is a public trust which individual citizens and taxpayers have an interest in preserving and standing to do so in the courts. Count IX alleges that any voluntary alienation of any of Allerton Park would be in violation of the trust agreement. Since both an interest and a violation of the trust agreement are alleged, Count IX states a cause of action. Unlike the counts discussed above against the governor and other State officials seeking to enjoin them from anticipated future agreements or cooperation with the Federal government which in turn would facilitate and presumably lead to the ultimate danger which plaintiffs really fear, Count IX directly seeks to stop State officials from doing something which in and of itself plaintiffs allege is wrongful and injurious to a protected interest which they have standing to assert—that is, the charitable or public trust. The terms of the grant are specific, and simply by entering into the planning stage and signing agreements to cooperate and in fact actively seek local approval, the University of Illinois trustees may well have violated the terms of the grant and any future actions merely submitting Allerton Park to the threat of change may be exposing it to destruction.

Therefore, not only does Count IX differ in that there is an immediate threat alleged (alienation of the trust rather than flooding in future), in addition plaintiffs have no alternative in seeking to enforce the trust as they might under the Environmental Protection Act with regard to the other counts of their complaint (the injury is not environmental but contractual).

■■ Therefore, the trial court's dismissal of Counts I through VIII of

plaintiffs' complaint which in essence sought to enjoin cooperation with the Federal government which might lead to the adoption of a project anticipated to be injurious to the environment and Allerton Park was proper. The dismissal of Count IX was improper in that it seeks to enjoin an act of the defendant Board of Trustees which in itself is alleged to be both wrongful and a direct immediate threat to a protectable interest. That count does state a cause of action and should not have been dismissed.

Affirmed in part, reversed in part.

CRAVEN and TRAPP, JJ., concur.