THE VILLAGE OF SOUTH ELGIN, *et al.*, Plaintiffs-Appellants, *v.* WASTE MANAGEMENT OF ILLINOIS, INC., *et al.*, Defendants-Appellees.

Second District   No. 77-208

Opinion filed July 28, 1978.—Rehearing denied August 30, 1978.

Kenneth F. Miles, of Jordan & Miles, of Elgin, for appellants.

William J. Scott, Attorney General, and Richard V. Houpt and Kenneth J. Gumbiner, both of Pedersen & Houpt, both of Chicago (James N. Cahan, Richard W. Cosby, and Loretta Weber, Assistant Attorneys General, of counsel), for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:
The Village of South Elgin, the County of Kane, and Eugene Armentrout, State's Attorney for Kane County, filed a complaint for an injunction against Waste Management of Illinois, Inc., and the Illinois Environmental Protection Agency, seeking to have certain developmental and operational permits issued by the Environmental Protection Agency declared void, and to have Waste Management of Illinois, Inc., enjoined from taking any action to operate a landfill under the permits. Waste Management of Illinois and the Environmental Protection Agency filed motions to dismiss the complaint and the trial court granted the motions, sustaining the constitutionality of the applicable provisions of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1001 *et seq.*), and dismissing the complaint "for failure of plaintiffs to exhaust

their administrative remedies before the Illinois Pollution Control Board." The plaintiffs appeal, contending that (1) sections 39 and 40 of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, pars. 1039 and 1040) are unconstitutional; (2) that the plaintiffs do not have an adequate administrative remedy and therefore the trial court erred in dismissing their complaint for failure to exhaust their administrative remedies under the Environmental Protection Act and, (3) that the pleadings demonstrate that the activities of Waste Management of Illinois violate section 7—4—4 of Illinois Municipal Code of 1961 (Ill. Rev. Stat. 1977, ch. 24, par. 7—4—4).

The Village of South Elgin lies immediately northwest of the landfill site which is the subject of this litigation. The problem of landfill operation in the subject area was before this court in the case of *Tri-County Landfill Co. v. Pollution Control Board* (1976), 41 Ill. App. 3d 249. That case involved an Illinois Pollution Control Board finding that two landfill companies operating immediately to the east of a 235-acre tract referred to as "Site C," were guilty of violating section 12 of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1012), in that leachate and pollutional discharges from their landfills had polluted the surface waters on "Site C" and created a hazard to the lower aquifer, from which the Village of South Elgin draws its water supply. While this court held that the imposition of the maximum statutory fine was inappropriate, the court affirmed the findings of the Pollution Control Board in all other respects. The landfill site which is at issue in this case (hereafter, the "new site"), consists of a 55-acre tract in the center, and near the western edge, of "Site C."

On June 17, 1976, a few months before this court's opinion in the *Tri-County* case, the Environmental Protection Agency issued an environmental permit to Waste Management of Illinois for a landfill operation on the "new site." The Village of South Elgin responded by filing a complaint for injunction in the circuit court, seeking to enjoin the use of the "new site" as a sanitary landfill. Waste Management of Illinois, as a defendant in that action, asserted that South Elgin's complaint should be dismissed, since South Elgin had an adequate administrative remedy under Rule 503 of the procedural rules of the Pollution Control Board, which provides that "any person may file a complaint seeking revocation of a permit," where the permit was violative of an applicable statute, or order or regulation of the Pollution Control Board. South Elgin responded that Rule 503 was invalid, since it was not authorized by section 40 of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1040), which only granted a procedural right to contest a *refusal* to issue a permit, and that South Elgin therefore lacked an adequate administrative remedy. The circuit court of Kane County, rejecting this argument,

entered an order on August 6, 1976, dismissing the complaint for "failure of the plaintiff to exhaust administrative remedies." South Elgin did not appeal from the entry of this order.

On November 12, 1976, the Village of South Elgin and a number of citizens filed a complaint before the Pollution Control Board against Waste Management of Illinois and the Environmental Protection Agency, pursuant to Rule 503. The complaint in the instant case alleges that the proceeding filed November 12, 1976, before the Pollution Control Board, "still pends," but, during oral argument, counsel for South Elgin advised this court that South Elgin had "taken a voluntary non-suit" in the action before the Pollution Control Board.

On December 8, 1976, an operational permit was issued by the Environmental Protection Agency to Waste Management of Illinois, allowing the operation of a sanitary landfill on the "new site."

On January 27, 1977, plaintiff commenced the instant action. Their complaint cites evidence presented to the Pollution Control Board in the *Tri-County* case, and various findings made by that body, and asserts that those findings are *"res judicata."* The findings, of course, concern the threat to the lower aquifer, which was presented by pollutional and leachate run-offs from the adjoining landfill sites onto "Site C," which was at issue in the *Tri-County* case. The complaint attacked the constitutionality of sections 39 and 40 of the Environmental Protection Act on grounds of equal protection and due process, since the statutes "allow no remedy to anyone aggrieved by the granting of a landfill permit." It was asserted that the Environmental Protection Agency violated the Pollution Control Board's solid waste regulations in issuing the permit to Waste Management of Illinois and that the Environmental Protection Agency had acted capriciously in granting the permit, since it assertedly failed to receive proof that the issuance of the permit would not cause a violation of the Environmental Protection Act. It was further alleged that since the issuance of the developmental permit, Waste Management of Illinois has "maintained a round-the-clock pumping action" on the "new site" thereby reducing the capacity of one of the Village's wells by 50%. It was asserted that "circumstances of substantial danger to the environment and to the public health of persons and the welfare of persons exists," that "plaintiffs have no remedy other than by injunctive relief herein," and that if an injunction were not granted to plaintiffs "the continuing threat and hazard to the Village of South Elgin's drinking water supply" by reason of pollution and reduction of the water table "would become greater, and irreparable injury, loss and damage" would result.

In passing upon the trial court's dismissal of the complaint, we turn first to the question of whether sections 39 and 40 are unconstitutional. Section

39 governs the issuance of permits (Ill. Rev. Stat. 1977, ch. 111½, par. 1039). This section provides that where the Pollution Control Board has by regulation required a permit for the operation of any type of facility, the applicant shall apply to the Environmental Protection Agency for a permit, and "it shall be the duty of the Agency to issue such a permit upon proof by the applicant" that the facility will not cause a violation of the Environmental Protection Act. This section expressly provides that "* * * [p]ermits with respect to sanitary land fills are further subject to the notice requirements of Section 22 of this Act," but, incongruously, section 22 of the Act contains no mention of any "notice requirements." At the time of the filing of the complaint in this case, section 39, itself, contained no provision for serving notice of a permit application upon any interested third parties.[1] Section 40 provides for notice and a hearing in cases where the Environmental Protection Agency has *refused* to grant a permit, but contains no provision for a hearing in a case where a permit is *granted*. (Ill. Rev. Stat. 1977, ch. 111½, par. 1040.) The failure of the legislature to provide, in sections 39 and 40, for notice to interested third parties, or an adversarial hearing as a forum for presenting evidence, in opposition to the issuance of a permit, forms the basis for the plaintiffs' attack on the constitutionality of the statute.

■■ Although plaintiffs have made the bare assertion that sections 39 and 40 are violative of equal protection, they have presented no authority or argument which would support this assertion. Clearly, the sections do not create any unreasonable classification which would run afoul of the requirements of equal protection.

It is equally clear that the statute does not violate due process. The Environmental Protection Agency and Waste Management of Illinois call our attention to the fact that the plaintiffs, pursuant to normal procedures of the Agency, were able to make extensive submissions of materials in opposition to the proposed landfill, prior to the issuance of a permit; thus, plaintiffs were not without input in the Environmental Protection Agency's decision.

It is also argued that Rule 503 of the Pollution Control Board's procedural rules, and Rule 205(j) of the Pollution Control Board's Solid Waste Regulations, provide a means for interested third parties to contest the issuance of a permit, which is more than adequate to fulfill the requirements of due process. Rule 205(j) provides that any person

---

[1] The statute has since been amended to provide that:

"Immediately upon receipt of a request for a permit or supplemental permit for a refuse disposal facility, the Agency shall notify the State's Attorney and the Chairman of the County Board of the county in which the facility is located and each member of the General Assembly from the legislative district in which that facility is located and to the clerk of each municipality any portion of which is within 3 miles of the facility." (Amended by P.A. 80-913, §1, eff. Oct. 1, 1977.)

adversely affected by the issuance of a permit may petition the Pollution Control Board for a hearing to contest such issuance. Rule 503 provides, in part that, "Any person may file a complaint seeking revocation of a permit * * *" on the basis of improper issuance, or other grounds. However, plaintiffs argue that Rule 503 is beyond the Board's power and therefore invalid, and the question of whether the rule is valid is now pending before the Illinois Supreme Court in two cases (County of Cook v. Sexton (Docket No. 50499) and Landfill, Incorporated v. Pollution Control Board (Docket No. 50498).) If these rules are valid, they provide a substantial means for affected third parties to dispute the issuance of a permit by the Environmental Protection Agency.

However, the essential question is broader than any issue concerning the validity or effect of Rule 503 or Rule 205(j): Does due process mandate that interested third parties be given the opportunity to participate in the administrative process by which the Environmental Protection Agency issues developmental and operational permits? Our conclusion is that there is no such constitutional mandate.

For more than a century, courts of this State have recognized that individuals who are dependent upon subsurface waters have an important interest in insuring that their water is free from pollution, and the right to bring an appropriate legal action where such waters are polluted, or pollution is threatened. (*E.g., Ottawa Gas Light & Coke Co. v. Graham* (1862), 28 Ill. 73; *Wahle v. Reinbach* (1875), 76 Ill. 322; *Van Brocklin v. Gudema* (1964), 50 Ill. App. 2d 20.) Obviously, an interest of this magnitude is entitled to the protections of due process.

■■ However, it does not follow that sections 39 and 40 are unconstitutional, or that the Environmental Protection Agency must hold an adversarial hearing, with notice to any conceivably interested third party, prior to issuing a permit for a sanitary landfill. Although the issuance of a permit undoubtedly confers conditional State approval upon the contemplated activities of a sanitary landfill development, the permit is merely an element or step in the administrative process, and is subject to revocation in the event that the permit holder violates the Environmental Protection Act. (Ill. Rev. Stat. 1975, ch. 111½, par. 1033(b).) The permit itself cannot be said to deprive residents of their right to the use of subsurface waters, free from pollution by adjoining landfills; the deprivation of that interest, if it occurs at all, occurs only when the projected or actual operation of the landfill causes or threatens to cause pollution. When that happens, section 31(b) of the Act gives "any person" the right to file a complaint before the Pollution Control Board, which must (unless the complaint is duplicitous or frivolous) hold a hearing on the matter, giving the complainant the opportunity to show that the respondent in that proceeding has caused or threatened to cause water pollution; notice of

this hearing must be sent to any person who has complained to the Environmental Protection Agency regarding the respondent during the six months preceding the filing of the complaint, and any person in the county in which the offending activity has occurred, who has requested notice of the enforcement proceedings. (Ill. Rev. Stat. 1975, ch. 111½, par. 1031.) Thus, although sections 39 and 40 make no provision for an adversarial hearing, or notice to third parties, prior to the issuance of a permit, it is clear that the Environmental Protection Act, when considered in its entirety, provides a sufficient remedy for those whose interests are affected by the threat of pollution, to satisfy the requirements of due process. We, therefore, find no constitutional mandate that the Environmental Protection Agency hold an adversarial hearing, prior to issuing a developmental or operational permit for a sanitary landfill.

See *Northwest Environmental Defense Center v. Mid-Willamette Valley Air Pollution Authority* (Ore. App. 1974), 519 P.2d 1271; *cf. County of Santa Barbara v. Hickel* (9th Cir. 1970), 426 F.2d 164; *County of Santa Barbara v. Malley* (9th Cir. 1970), 426 F.2d 171, *cert. denied* (1969), 396 U.S. 950, 24 L. Ed. 2d 257, 90 S. Ct. 394; 400 U.S. 999, 27 L. Ed. 2d 450, 91 S. Ct. 454.

■■ The plaintiffs assert that the statute does not provide them with an adequate administrative remedy. They point out that the litigation in the *Tri-County* case consumed 5 years, and assert that if their remedy in this case, and in the matter of future anticipated applications for landfill permits for the balance of "Site C", is restricted to such a course of administrative proceedings and judicial review, the water supply of South Elgin will have become polluted and the plaintiffs irreparably damaged, long before the conclusion of the proceedings. We disagree and hold that the procedures set forth in sections 31 and 33 of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, pars. 1031 and 1033) provide an adequate administrative remedy to plaintiffs. If plaintiffs file a complaint before the Pollution Control Board and demonstrate a substantial threat of pollution at the administrative hearing on the complaint, the Board, after due consideration, may direct a landfill operator to cease and desist from the offending activity, or may revoke the landfill operator's permit. (Ill. Rev. Stat. 1975, ch. 111½, par. 1033.) In the event that the Pollution Control Board fails to grant such relief, plaintiffs may file a petition for review, pursuant to the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*), with review being afforded directly in the appellate court in the district where the cause of action arose, rather than in the circuit court. (Ill. Rev. Stat. 1975, ch. 111½, par. 1041.) Assuming, as in *Tri-County*, that an appeal would be taken in either instance, we can detect no reason why an administrative procedure before the Pollution Control Board, followed by a direct

appeal to this court, would consume more time or provide less satisfactory relief than an original action in the circuit court, followed by an appeal to this court. Thus, on the face of the statute it seems clear the parties who feel that a given landfill operation creates a threat to the water supply, have an adequate administrative remedy before the Pollution Control Board.

■■ Did the trial court err in restricting the plaintiffs to the remedy thus afforded by the Environmental Protection Act? It is well established that " 'a party aggrieved by administrative action ordinarily cannot seek review in the courts without first pursuing all administrative remedies available to him * * *.' " (*Bulk Terminals Co. v. Environmental Protection Agency* (1976), 65 Ill. 2d 31, 36, *cert. denied* (1977), 431 U.S. 954, 53 L. Ed. 2d 270, 97 S. Ct. 2673, quoting *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 358.) The plaintiffs assert that the rule has no application in this case since the Pollution Control Board has already in effect determined, in the *Tri-County* case, that the operation of a landfill on the "new site" or anywhere on "Site C" would create a threat of pollution to the South Elgin water supply. However, the determination of the Pollution Control Board, and of this court, in the *Tri-County* case, will not support such a broad and conclusive interpretation. The factual question in *Tri-County* was whether the run-off from landfill operations on Sites A and B, onto Site C, created a hazard of pollution to the lower aquifer. Neither the Pollution Control Board nor this court passed upon the question of whether it was technologically feasible to develop some portion of Site C as a landfill without creating a hazard to the lower aquifer. Thus, there is no merit in plaintiffs' assertion that the question of whether a landfill can be operated on the "new site" was already resolved in the negative and is *res judicata* under *Tri-County*, even assuming that the doctrine of prior adjudication is otherwise applicable.

■■ Plaintiffs have also argued that this case falls within several recognized exceptions to the general rule requiring the exhaustion of administrative remedies, since their complaint attacks the constitutionality of the applicable statute, and since they will suffer irreparable harm if forced to resort to their administrative remedy. However, while it is true that those who seek relief from a statute on the ground that it is void in its entirety are not obliged to pursue the machinery of the statute itself for their remedy, this exception to the exhaustion doctrine can have no application where, as here, it is not contended that the statute (*i.e.*, The Environmental Protection Act) is unconstitutional in its entirety, but merely that one provision of the statute is unconstitutional as applied to plaintiffs, *Bright v. City of Evanston* (1956), 10 Ill. 2d 178; and, in any case, we have held plaintiffs' constitutional claims to be without merit. Similarly, our holding that the

statute accords plaintiffs an adequate administrative remedy, coupled with the fact that, apart from a conclusional allegation, the complaint alleges no facts sufficient to demonstrate that the plaintiffs will suffer irreparable harm, if restricted to the remedy afforded by the statute, removes this case from the "irreparable" harm exception to the exhaustion doctrine. *Bulk Terminals Co. v. Environmental Protection Agency* (1976), 65 Ill. 2d 31, 37-38, *cert. denied*, 431 U.S. 954, 53 L. Ed. 2d 270, 97 S. Ct. 2674.

■■ We note that the Environmental Protection Act itself provides for one instance where relief may be sought directly in the circuit court and the administrative procedures established by the Act entirely bypassed. Section 43(a) provides that the State's Attorney or Attorney General may institute an action for an "immediate injunction" to halt any discharge or other activity caused or contributing to "circumstances of substantial danger to the environment." (Ill. Rev. Stat. 1975, ch. 111½, par. 1043(a)). This section does not affect the validity of the trial court's dismissal of the complaint, however, even as to the State's Attorney, since no facts were alleged demonstrating a "substantial danger to the environment." (See *Parsons v. Walker* (1975), 28 Ill. App. 3d 517.) It is thus clear that the trial court did not err in dismissing plaintiffs' complaint on the grounds that plaintiffs failed to exhaust their administrative remedies under the Environmental Protection Act.

■■ Finally, we reject the plaintiffs' somewhat puzzling assertion that "activities by Waste Management" "violate" section 7—4—4 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 7—4—4), which provides that municipalities shall have jurisdiction over all waters "within or bordering upon the municipality." Since this section does not impose any duty upon anyone, it is difficult to see how Waste Management of Illinois can be held to have "violated" it, and in any event, the Environmental Protection Act has pre-empted local regulation of sanitary landfills. *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406.

For the foregoing reasons, we conclude that the judgment of the circuit court of Kane County dismissing the plaintiffs' complaint should be affirmed.

Judgment affirmed.

GUILD and NASH, JJ., concur.