WHITE FENCE FARM, INC., Plaintiff-Appellant, *v.* LAND AND LAKES COMPANY *et al.*, Defendants-Appellees.

Fourth District    No. 16673

Opinion filed August 20, 1981.—Rehearing denied September 17, 1981.

David Lincoln Ader, of Chicago, for appellant.

Tyrone C. Fahner, Attorney General, of Chicago (Kenneth G. Anspach, Assistant Attorney General, of counsel), for appellee Environmental Protection Agency.

John F. Ward, Jr., and Michael W. Ward, both of O'Keefe, Ashenden & Lyons, of Chicago, for appellee Land and Lakes Company.

Mr. JUSTICE MILLS delivered the opinion of the court:

The Illinois EPA issued a permit for a sanitary landfill.

Did the EPA have jurisdiction? Yes.

Did the complainant exhaust its administrative remedies? No.

The complaint was dismissed and we affirm.

White Fence Farm, Inc. (White Fence), filed a nine-count complaint seeking declaratory judgment, *certiorari*, and other relief regarding a sanitary landfill permit that the Illinois Environmental Protection Agency (EPA) had granted to Land and Lakes Company (Land and Lakes). The complaint alleges that White Fence operates a large restaurant adjacent to a site which the EPA has approved for a sanitary landfill. Numerous other factual allegations concern the manner in which solid waste will be disposed of at the site, the possibility that operation of the landfill will pollute underground water which White Fence uses in its restaurant business, and the EPA's failure to consider land-use implications when granting the permit.

The complaint also alludes to certain rules and regulations promulgated by the Pollution Control Board (Board). Chapter 7 of these rules and regulations—dealing with solid waste—outlines the process to be followed by a party seeking a sanitary landfill permit from the EPA. In particular, the complaint refers to Rule 301, which provides that no person shall operate a sanitary landfill unless each requirement contained in Rules 302 and 318 is performed. It is then alleged that Land and Lakes and the EPA failed to comply with Rule 316(a), which provides, in part, as follows:

> "An Application for a Development Permit for a sanitary landfill shall contain evidence adequate to prove to the Agency that the development of the sanitary landfill will not cause or tend to cause water or air pollution; will not violate applicable air and water quality standards; and will not violate any rule or regulation adopted by the Board. The Application shall include, unless waived in writing by the Agency as inapplicable to the site in question: * * *."

The rule then lists 17 items which are to be contained in an application. Rule 205(a) provides, "All applications for permit required under these Regulations shall contain all data and information specified in those Rules

governing the type of facility for which the permit is required." White Fence's complaint alleges that several of the items listed in Rule 316(a) were omitted—without written waiver—from Land and Lakes' application.

Count I of the complaint, which deals mainly with the possibilities of pollution of underground water, seeks a declaratory judgment that the permit is null and void.

Count II alleges that the permit was granted without jurisdiction on the part of the EPA.

Count III claims the EPA acted arbitrarily and carpriciously in granting the permit.

Count IV shifts from an emphasis on underground water to one of land use. It enumerates matters which the EPA allegedly either failed to consider or did not consider adequately and alleges that the EPA acted arbitrarily and capriciously in granting the permit without taking these items into consideration.

Count V alleges that the EPA exceeded its statutory authority by failing to consider the land-use implications and failing to use its permit-granting authority to implement a unified statewide environmental protection plan.

Count VI alleges that the EPA acted arbitrarily and capriciously by not requiring wells to be drilled downstream from the site to check for pollution of underground water.

Count VII claims the EPA acted without jurisdiction by "violating those regulations and rules binding upon it to provide minimum standards of safety and adequate measures to monitor groundwater pollution and which forbid the granting of a permit where the landfill threatens a discharge of contaminants which will cause or tend to cause water pollution in Illinois."

Count VIII alleges that prior to filing this complaint, White Fence had challenged the granting of the permit in an action before the Board, pursuant to the Board's rules and regulations. (During the pendency of that action, the supreme court decided *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 387 N.E.2d 258, which held invalid the Board's rules and regulations insofar as they allowed a third party to attack the propriety of the Agency's action in granting a sanitary landfill permit. On April 12, 1979, the Board, relying on *Landfill*, dismissed White Fence's action for want of jurisdiction.)

Count VIII alleges that White Fence has no remedy but the present action and asks for a writ of *certiorari* directing the EPA to bring to the trial court the record of the permit-granting proceedings and for the court to set aside the order granting the permit.

Finally, count IX seeks the same relief as count VIII, alleging that the

EPA violated its obligations under the Environmental Protection Act and its regulations.

Both Land and Lakes and the EPA moved to dismiss White Fence's complaint on the ground that White Fence had failed to exhaust its administrative remedies. The trial court, without stating its reasons, allowed the motion to dismiss and struck the cause.

Any party aggrieved over possible pollution at a site for which the EPA has issued a permit has an administrative remedy under section 31(b) of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1979, ch. 111½, par. 1031(b)). That provision says, in part:

> "Any person may file with the Board a complaint, meeting the requirements of subsection (a) of this section, against any person allegedly violating this Act or any rule or regulation thereunder or any permit or term or condition thereof."

Because section 12(a) of the Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1012(a)) prohibits *threatening* pollution, courts have recognized that a section 31(b) "enforcement action" is available before the Board even when no pollution has yet occurred. (*Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 387 N.E.2d 258; *Village of South Elgin v. Waste Management of Illinois, Inc.* (1978), 62 Ill. App. 3d 815, 379 N.E.2d 349.) The Board's Rule 208 provides that a permit is not a defense to a violation of the Act. The EPA thus argues on appeal that White Fence was required, under the doctrine of exhaustion of administrative remedies (see *Landfill*; *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 360, 326 N.E.2d 737), to pursue a section 31(b) "enforcement action" before seeking relief in the courts. The complaint's numerous factual allegations concerning the likelihood of pollution suggest that the threat of pollution was White Fence's overriding concern.

■■ White Fence contends, however, that it was not required to pursue the administrative remedy because its complaint attacks the permit on the ground that the EPA issued it without jurisdiction. Illinois courts have recognized the rule that a party is not required to exhaust his administrative remedies when he is contending that the administrative agency has acted without jurisdiction. (*City of Chicago v. Fair Employment Practices Com.* (1975), 32 Ill. App. 3d 242, 336 N.E.2d 359; *W. F. Hall Printing Co. v. Environmental Protection Agency* (1973), 16 Ill. App. 3d 864, 306 N.E.2d 595; *Horan v. Foley* (1963), 39 Ill. App. 2d 458, 188 N.E.2d 877.) Thus, if the complaint does allege a jurisdictional defect in the EPA's proceedings when granting the permit, then the complaint should not have been dismissed on the basis of the exhaustion of remedies doctrine.

White Fence would have us merely acknowledge the above exception to the exhaustion doctrine and reverse and remand the case to the

trial court for a determination of whether the complaint alleges facts showing lack of jurisdiction on the part of the EPA. It is White Fence's position that, since the motions to dismiss alluded only to the exhaustion of remedies doctrine as the ground for dismissal, the trial court has not passed upon the sufficiency of the complaint's jurisdictional allegations. However, since the record on appeal contains no transcript of the hearing on defendants' motions, we cannot know with certainty whether the jurisdictional challenge was made at that stage. For all we know, the matter may have been argued before the trial judge, and his dismissal may have been grounded upon his determination that the complaint did not allege facts which would bring into question the EPA's jurisdiction.

■■ We need not, however, rely upon such conjecture, for when a complaint has been dismissed, the dismissal will be upheld upon any basis found in the record. (*Sandberg v. American Machining Co.* (1975), 31 Ill. App. 3d 449, 334 N.E.2d 246; *Bauscher v. City of Freeport* (1968), 103 Ill. App. 2d 372, 243 N.E.2d 650.) "A judgment can be sustained by a reviewing court on any basis appearing in the record which validly supports it, even if the ground was not ruled upon by the trial court." (*In re Application of County Treasurer* (1976), 35 Ill. App. 3d 449, 451, 342 N.E.2d 249, 251.) We therefore proceed to the issue of whether the complaint alleges a jurisdictional defect. White Fence will not be prejudiced by our consideration of this question, for it addressed the issue in its brief and at oral arguments.

Only counts II and VII specifically allege the EPA's lack of jurisdiction in the permit-granting proceeding. The word *jurisdiction* is not, of course, a talisman which requires us, in knee-jerk fashion, to say that these two counts should not have been dismissed. Likewise, the absence of that word from the other counts does not necessarily mean that they do not allege a jurisdictional defect—though White Fence's failure even to use the word is a strong indication that it did not intend to allege lack of jurisdiction in those counts.

To support its argument that its complaint alleges facts showing that the EPA lacked jurisdiction, White Fence relies primarily upon its allegations in count II concerning the EPA's failure to follow the Board's rules, in that the EPA granted the permit even though Land and Lakes' application did not contain all the data required by the rules. White Fence contends that the application was thus incomplete and that the application therefore did not give the EPA jurisdiction over the proceeding. The question presented, then, is whether an administrative agency's failure to require a litigant to present all data required by the applicable administrative rules deprives the agency of jurisdiction.

We have been unable to find any Illinois case which addresses this narrow question. The four cases cited by White Fence are inapplicable.

*People ex rel. Campbell v. Blocklinger* (1931), 344 Ill. 447, 176 N.E. 749; *Kal v. Rhydderck* (1925), 317 Ill. 231, 148 N.E. 53; and *Kahn v. Civil Service Com.* (1976), 40 Ill. App. 3d 615, 352 N.E.2d 231, stand for the proposition, relevant here, that the jurisdiction of a court of limited jurisdiction or of an administrative agency must be affirmatively shown in the record and that its jurisdiction will not be presumed. However, these cases deal with an agency's failure to act within boundaries set by *statute*, and they therefore are not particularly helpful in deciding whether an agency's conformity to administrative rules is a jurisdictional requirement. White Fence's other case, *Berwyn Savings & Loan Association v. Illinois Savings & Loan Board* (1975), 29 Ill. App. 3d 965, 331 N.E.2d 254, does not even mention jurisdiction and is thus of no help in deciding the issue at hand.

For us to hold that the EPA's failure to follow the Board's rules deprives the EPA of jurisdiction, we must, first, find that the Board has the statutory authority to determine the EPA's jurisdiction; for the Board, like any other administrative agency, has no greater powers than those the legislature has given it. (*Village of Lombard v. Pollution Control Board* (1977), 66 Ill. 2d 503, 363 N.E.2d 814.) Second, we must find that the Board's regulations were actually intended to set forth the EPA's jurisdictional boundaries.

After examining the Environmental Protection Act, we are somewhat doubtful whether that legislation envisioned the Board as having the power to determine the EPA's jurisdiction. Section 4(g) of the Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1004(g)) gives the EPA the duty of administering whatever permit system may be established by the Act or by regulations. The Act then proceeds to give the Board quite broad power to adopt regulations to carry out the purposes of the Act. (See, *e.g.*, Ill. Rev. Stat. 1979, ch. 111½, pars. 1022 and 1027.) The sections granting this power, however, are geared toward regulations which will set pollution standards, not toward ones which will define the jurisdiction of the EPA.

The case of *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 387 N.E.2d 258, by analogy leads us to the conclusion that the Board lacks the authority to delineate the EPA's jurisdiction. In *Landfill*, the court held that the Board does not have the authority to entertain an action in which a third party challenges the EPA's granting of a permit. The opinion was concerned with assuring that the Board would not redetermine the facts ruled upon by the EPA and thus take on the permit-granting power statutorily given to the EPA. The court said that the Board could not "become involved as the overseer of the Agency's decision-making process through evaluation of challenges to permits * * *." (74 Ill. 2d 541, 557, 387 N.E.2d 258, 264.) The court thus held invalid a pro-

cedural rule and a regulation, issued by the Board, which would have allowed such actions.

*Landfill* does not address the question whether the Board has the authority to set forth, by rule or regulation, the EPA's jurisdiction in its permit-granting authority. But if, as held in *Landfill*, the Board lacks the statutory power to adopt rules and regulations allowing it to make a substantive review of the EPA's granting of a permit, then we think it only reasonable that the Board could not adopt rules and regulations which set forth the EPA's jurisdiction in the permit-granting process.

■■ But even assuming that the Board has the statutory authority to decide the EPA's jurisdiction, we are convinced that the rules in question were not intended by the Board to fulfill that function. To reiterate briefly, White Fence contends that Rules 205(a), 301, and 316(a) were violated in that Land and Lakes' application failed to include data required by Rule 316(a). However, Rules 205(f) and (g) vividly illustrate that the Board did not intend that the EPA's failure to comply with its rules would deprive the EPA of jurisdiction:

"(f) An application for permit shall not be deemed filed until the Agency has received, at the designated address, all information, documents, and authorizations in the form and with the content required by these Rules and related Agency procedures. However, if the Agency fails to notify the applicant within 45 days after the receipt of an application for a development permit and 30 days after the receipt of an application for an operating permit, that the application is incomplete, and of the reasons, the application shall be deemed to have been filed on the date received by the Agency. An applicant may deem the Agency's notification that the application is incomplete as a denial of the permit for purposes of review pursuant to Section 40 of the Act.

(g) If the Agency fails to take final action on the application for development permit within 90 days from the filing thereof, or on the application for operating permit within 45 days from the filing thereof, the applicant may deem the permit granted on the 91st day or the 46th day after the application was filed."

Under these rules, an incomplete application for a sanitary landfill development permit would be deemed filed at the expiration of 45 days. This incomplete application would then be deemed granted 90 days thereafter if the EPA has not taken final action. If we were to follow White Fence's argument that the Board's rules are jurisdictional, then every such incomplete permit which is deemed granted because of the EPA's inaction would have to be regarded as void for having been granted without jurisdiction. The Board surely did not intend such an

absurd result. Thus, we conclude that the Board did not intend for the EPA's attainment of jurisdiction to depend upon an applicant's including all the items listed in Rule 316(a) in its permit application.

We therefore hold that the alleged incompleteness of Land and Lakes' permit application did not deprive the EPA of jurisdiction and that count II was properly dismissed. Counts I and III, which unlike count II do not mention jurisdiction, contain essentially the same allegations as count II. The dismissal of those counts was therefore also proper.

■■ In count VII, which also specifically alleges that the EPA acted without jurisdiction, White Fence realleges most of the matters found in count II and further alleges that the EPA failed to give proper consideration to various factors when it decided to issue the permit to Land and Lakes. Count VII also alleges that the EPA granted the permit to Land and Lakes in violation of certain rules and regulations of the Board. Whether the EPA gave proper consideration to various factors has nothing to do with its attaining jurisdiction over the matter. We have already rejected the contention that the Board's rules determine the EPA's jurisdiction, and we see no reason to regard its regulations any differently. Count VII therefore fails to allege lack of jurisdiction and was properly dismissed.

Counts IV, V, VI, VIII, and JX, which do not mention jurisdiction, contain no allegations which differ in kind from those already discussed. Thus, these counts, too, were properly dismissed.

■■ White Fence, in an effort to persuade us that we should not pass upon the jurisdictional issue, has argued that our affirmance of the dismissal of this complaint would deprive it of the opportunity to refine its complaint by amendment to make a better statement as to the EPA's lack of jurisdiction. It is true that when a good cause of action has been defectively pleaded and that defect is asserted for the first time on appeal, a reviewing court should not hold the complaint improper on that ground. But since this complaint "wholly and absolutely fails to state a cause of action" (*Christensen v. Wick Building Systems, Inc.* (1978), 64 Ill. App. 3d 908, 911, 381 N.E.2d 1189, 1191), it is proper for us to rely upon that defect as a ground for affirming the dismissal. The flaw in this complaint is one of substance, not of form, and White Fence could not amend it in a way that would cure the defects we have found in it.

■■ As an alternative ground for maintaining this suit, White Fence relies upon section 45(b) of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1045(b):

> "Any person adversely affected in fact by a violation of this Act or of regulations adopted thereunder may sue for injunctive relief against such violation. However, no action shall be brought under this Section until 30 days after the plaintiff has been denied relief

by the Board under paragraph (b) of Section 31 of this Act. The prevailing party shall be awarded costs and reasonable attorneys' fees."

White Fence's complaint seeks, *inter alia*, injunctive relief, as required by section 45(b). However, a section 31(b) enforcement action before the Board is a condition precedent to bringing a section 45(b) action. (*Parsons v. Walker* (1975), 28 Ill. App. 3d 517, 328 N.E.2d 920.) White Fence argues that the action it brought before the Board was under section 31(b) and that the dismissal of that action allows the instant action to proceed. The Board undoubtedly dismissed White Fence's suit because it sought, in part, to attack the EPA's granting of the permit—a procedure which the *Landfill* case precludes. Thus, White Fence was not "denied relief" under a properly pursued section 31(b) action, and section 45(b) does not allow this suit.

White Fence argues strenuously that dismissal of its action will leave it without a remedy for attacking this permit. The Environmental Protection Act, however, does not contemplate that a person in White Fence's position have such a remedy available to it. Section 40(b) of the Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1040(b)), which outlines the Board's power to review the EPA's decisions, allows a third party to appeal the EPA's granting of a *hazardous waste disposal permit*, but *not* of a *sanitary landfill permit*. That the legislature did not provide for a third-party attack upon the granting of a sanitary landfill permit strongly suggests that it did not see that as a proper action, whether before the Board or in the courts.

In response, White Fence contends that if the Act precludes any attack upon the granting of a permit, then it violates article I, section 12, of the Illinois Constitution:

> "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly."

It is White Fence's position that leaving it without a remedy would also violate the due process clauses of the United States and Illinois Constitutions.

■■ We cannot, however, see how White Fence has sustained any injury or wrong as a result of the granting of this permit. White Fence has a right to "a healthful environment" (Ill. Const. 1970, art. XI, §2) but does not enjoy a right to be free from a sanitary landfill permit, which does not itself deprive White Fence of anything. The granting of a permit affects the relationship between the applicant and the EPA; it does not alter the position of the applicant *vis-a-vis* third parties.

"The permit itself cannot be said to deprive residents of their right

to the use of subsurface waters, free from pollution by adjoining landfills; the deprivation of that interest, if it occurs at all, occurs only when the projected or actual operation of the landfill causes or threatens to cause pollution." *Village of South Elgin v. Waste Management of Illinois, Inc.* (1978), 62 Ill. App. 3d 815, 820, 379 N.E.2d 349, 354; see also *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 387 N.E.2d 258.

■■ Even though Land and Lakes has a sanitary landfill permit, it does not, by virtue of that permit, have a license to pollute the environment. White Fence can pursue a section 31(b) action before the Board, alleging that Land and Lakes is threatening pollution, and the permit will be no defense to that action. The numerous factual allegations in White Fence's complaint demonstrate that that is White Fence's major concern. Thus, a section 31(b) enforcement action is "an effective administrative remedy which [will] resolve plaintiff's problem." (*Strom International, Ltd. v. Spar Warehouse & Distributors, Inc.* (1979), 69 Ill. App. 3d 696, 700, 388 N.E.2d 108, 111; see also *Village of South Elgin.*) *Ergo*, White Fence is not harmed by being unable to attack the granting of the permit.

■■ Because White Fence has not exhausted the administrative remedies available to it and because its complaint does not allege matters which would remove this case from the ambit of the exhaustion of remedies doctrine, we affirm the trial court's order dismissing the complaint and striking the cause.

Affirmed.

TRAPP, P. J., and GREEN, J., concur.