CUMMINGS v. THE CITY OF ST. LOUIS *et al,,* Appellants.

1. **Municipal Corporations**: LAND DEDICATED TO PUBLIC USE : COMMON. Proprietors who dedicate land to a city for public use as a common, remain for all other purposes its owners.

2. ——— : ——— : RIGHT OF CITY TO REGULATE : ~~DIVERTING ITS~~ USE The city may control and regulate such public use, but it cannot sell the property and devote it to private use and thereby destroy the trust created for the benefit of the public.

3. ——— : ——— : STATUTE. Section 2 of the act of the General Assembly of February 20, 1865 (Laws of 1865, p. 438) which declares that when a piece or parcel of land held for public use shall not be needed for public use, the land may be sold by the city, has reference to such property as is held by the city in full use and ownership. *e. g.,* commons acquired by confirmation under acts of congress. It has no reference to land dedicated by its proprietor to a particular use.

4. ——— : INJUNCTION : SUIT BY INDIVIDUALS. Where land in a city has been dedicated by the proprietor to the public, and the city by an ordinance has directed it to be sold, a private citizen, if injured in his individual rights with respect to his property, may prosecute a suit and enjoin the city from carrying the ordinance into execution.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Leverett Bell, R. Graham Frost, Robert W. Goode,* and *M. W. Huff* for appellants.

(1) The city of St. Louis had full authority under act of the legislature of 1865 (Laws, p. 439) to dispose of Exchange square. The square is no longer needed for public use and the consent of the heirs of the dedicators is to be obtained. (2) The respondent has no such personal or private interest in the maintenance of Exchange square as a common forever as to entitle him to an in-

junction. If he is likely to sustain any damage by the execution of ordinance 11,964, the damage will be common to all property in the neighborhood and will arise from a common cause, and these facts will preclude the recovery of any damages. *Smith v. Boston*, 7 Cush. 254 ; *Willard v. Cambridge*, 3 Allen, 574 ; *Blood v. Railroad*, 2 Gray, 140 ; *Bailey v. Culver*, 12 Mo. 175. (3) A private proprietor cannot maintain injunction against the sale or other disposition of a public square or park. The wrong, if any exists, is a public one and cannot be treated as a private grievance. *Smith v. Houston*, 6 Ohio, 101 ; *Tefft v. Buffalo*, 65 Barb. 460 ; *McGowan v. Whiteside*, 31 Ind. 236. But in Missouri the right to injunctive relief in the above cases is extended to the owner of lots facing the park or square in question. *Rutherford v. Taylor*, 38 Mo. 315 ; *Price v. Thompson*, 48 Mo. 361.

*M. McKeag* for respondent.

(1) The dedication of the ground marked " A " on the plat is a common law dedication for a specific purpose, to-wit : "to be and remain a common forever." The relation the city bears it is not the same that it bears to property that inured to it from the public lands of the federal or state government, nor as property acquired by the exercise of eminent domain, but it is clothed with the purposes and uses designated by the dedicators and is not subject to be disposed of by the city as other lands acquired from the public lands, or by condemnation. *City of Carondelet v. McPherson*, 20 Mo. 192 ; *Woodson v. Skinner*, 22 Mo. 13 ; *City v. Lessee, etc.*, 6 Pet. 431. (2) The respondent, John K. Cummings, being one of the grantees of Chambers, Christy ,and Wright, and the present owner of lots in the tract of land embraced in the plat in which these dedicated the land marked " A " and Monroe street to public use, and, as

such, has a special interest, and has shown a special damage, apart from the general public ; hence, he has a right to insist that Monroe street be kept open, and that the land marked " A " be kept as a public common for his benefit and his assigns, and courts of equity being the guardian of trusts, will see that the trust is not vio-lated nor the property diverted from the use to which it was dedicated. *Trustees v. Cowen*, 4 Paige Chy. 510 ; 2 Dillon (3 Ed.) secs. 647, 653, 660 ; 1 High on Inj., sec. 855 ; *Village v. Auten*, 77 Ill. 325 ; *Cooper v. Alden*, 1 Harr. Chy. 72 ; *City of Hannibal v. Draper*, 15 Mo. 406 ; *Rutherford v. Taylor*, 38 Mo. 315 ; *Price v. Thompson*, 48 Mo. 361 ; *City of Cincinnati v. Lessee*, 6 Pet. 431. (3) The mere pendency of a pretended suit by the heirs of Chambers, Christy and Wright against the city of St. Louis, the petition and the amended peti-tion of these heirs not showing any cause of action, could not give the city any authority to do indirectly what it could not do directly ; it could not convert this public property, held by it as trustee for the use of the public, in Monroe street and Exchange square, marked "A" on the plat, to private use without the consent of the vendees of the lots laid off. *Rowan's Ex'r v. Town*, 8 B. Monroe (Ky.) 232 ; *Police, etc., v. Fonehouse*, 30 La. (Pt. I. ) 64. The municipal authorities were not acting within the limits of the powers conferred upon them in attempting to sell public property for a private use. *Brown v. Manning*, 6 Ohio, 298 ; *LeClercq v. Town of Gallipolis*, 7 Ohio, 217 ; *Carter v. City of Chicago*, 57 Ill. 283 ; 2 High on Inj. (2 Ed.) sec. 1247 ; R. S., sec. 6573.

BLACK, J.—In 1816 Chambers, Christy and Wright, being the owners of a tract of land, laid the same off as an addition to St. Louis. The plat which was then re-corded, besides showing the lots, blocks, streets and other public grounds, has written thereon the following words : "The land marked 'A,' " which is then described,

"is to be and remain a common forever." The parcel of property thus devoted to a common is known in the record as "Exchange Square," and, as shown on the plat, has a length of thirteen hundred feet along the river and a width of one hundred and twenty to one hundred and twenty-five feet. It lies between Front (now Main) street and the river. Front street runs north and south. All of the streets running east and west through the addition go to the river for their eastern terminus. Three of these streets go through the common, dividing it into four fractional blocks for the purpose of a common. Part of Exchange square is now used as a public park, and a part is occupied by lessees of the city and by a railroad company by a license from the city. At this time the square, by reason of accretion, has a width of from four hundred and thirty eight to six hundred and thirty-eight feet, and there is an improved wharf between it and the river. A street parallel to the river has been projected through the north half of the square. In 1878 the heirs of the proprietors of the addition brought suit against the city, in which they allege that the city has so managed the property as to nullify and render impossible the expressed intentions of the donors, and they pray the court to divest the city of all title to the property and invest the full title in them. Pending that suit the municipal assembly passed an ordinance authorizing the mayor and other officers to consent to a decree by which the square and that portion of two of the streets where they pass over the common shall be sold and the proceeds divided, one half to the city and the other half to the plaintiffs in that suit.

The plaintiff prosecutes this suit to enjoin the city and its officers from carrying into execution that ordinance. He owns property in the third block west of the square with buildings thereon, and in which he carries on the St. Louis Glass Works. This factory property covers the entire front of that block on Monroe (now

Washington) street. It is a portion of this street which the city proposes to sell under the contemplated decree, so that the plaintiff in going to the wharf for sand, as he does, to be used at the factory, will be obliged, at Front street, to go one block north or south, and thence to the wharf. He also owns and resides upon other property in the same addition still further from the common. He acquired the residence and factory property by mesne conveyances from the proprietors, all made after the plat had been recorded.

1. That the proprietors dedicated this parcel of property to public use for a common, by the use of the words before quoted, cannot be doubted. For all other purposes, however, they remained the owners. They use the word common, not in any technical sense, but in its popular signification, as a parcel of ground set apart for common and public use, for the convenience and accommodation of the inhabitants of the city. The city may control and regulate that use, but it has no right to sell the property and devote it to private use, and thereby destroy the trust created for the benefit of the public. We have held that the city of St. Louis could not lease unconditionally for a term of years, for the prosecution of private business, property acquired by condemnation for a wharf. *The Belcher Sugar Refining Co. v. The St. Louis Grain Elevator Co.*, 82 Mo. 122. The same is true with respect to these streets and the common in question. It must follow that the proposed out and out sale is a flagrant abuse of the trust reposed in the city and without any warrant or authority of law.

2. The second section of the act of February 20, 1865 (Laws of 1865, p. 438) declares that when a piece or parcel of land, held for public use, shall not be needed for public use, the land may be sold by the city; but that section must have reference to such property as is held by the city in full use and ownership, as the commons acquired by confirmation under

the various acts of congress, and it can have no application to the property in question. The legislature of the state could not authorize any other use of the property in question than that specified in the act of dedication. It has no power to extend or enlarge the uses, much less the power to authorize an out and out sale of the property.

3. The more difficult question is as to the right of the plaintiff to maintain this suit. Judge Bliss, in his treatise on Code Pleading, section 81, states the rule to be as follows: " Where the injury to be prevented or abated is public merely—that is, where no citizen suffers a personal injury—it is a public matter, and the representative of the state is alone empowered to bring the action." The rule is applied to public nuisances, and to actions to restrain county and city authorities from the abuse of delegated powers, and from the exercise of unauthorized powers. But in all such cases the individual is entitled to sue if injured in his individual rights, either as to his person or property. Bliss on Code Plead., sec. 81 ; High on Inj. (2 Ed.) sec. 1553. It does not follow that the individual cannot sue, because the state, at the relation of the law officer, can. Such wrongs may be, and often are, both public and private, and in that case the individual injured also has his action. There is no doubt but the state could maintain this suit on the facts disclosed by the record. The question, then, is, has the plaintiff shown any threatened personal injury? The owner of lots fronting on a court house square may have injunctive relief against the erection of a building thereon for private purposes. *Rutherford v. Taylor*, 38 Mo. 316. So the owners of property fronting on a public park may enjoin the town trustees from diverting the property from the uses to which it was dedicated. *Price v. Thompson*, 48 Mo. 361 ; see also *Brown v. Manning*, 6 Ohio, 298 ; *Commissioners v. Lathrop*, 9 Kan. 453 ; *Cook v. City of Burlington*, 30 Iowa, 94. Persons

owning property bordering upon a public highway may have relief by injunction to prevent the obstruction, or appropriation of the highway to private use, to their special injury in the use of their property. *Belcher Sugar Refining Co. v. Grain Elevator Co., supra ; Green v. Oakes,* 17 Ill. 250 ; *Corning v. Lowerer,* 6 John. Ch. 439. But the contention here is, that relief in such cases is allowed to those only who own property fronting upon the square or park, or upon that part of the highway which is about to be closed or otherwise obstructed. Such contiguity is always to be considered, and the want of it may often defeat the plaintiff in his action, but it is not the test. The ultimate fact to be determined is, will the plaintiff suffer an injury to his individual rights. The case of *Bailey v. Culver,* 84 Mo. 531, is distinguishable from the one at bar. That was a suit to compel the defendants to remove a building erected by them over a vacated portion of an alley. The plaintiffs owned property in the same block, but one hundred and twenty feet distant from the alleged obstruction. The conclusion was reached upon all the facts, and not simply from the fact of the distance from the obstruction to plaintiffs' property, that they had shown no special injury. Again the alley had been deflected and a part vacated under an attempt, at least, of the municipal assembly to exercise the power conferred upon it, to vacate streets and alleys, and the suit to abate the alleged nuisance, it would seem, was not commenced until the large building had been erected at a cost of over one hundred and fifty thousand dollars.

Here the city cannot claim to be acting in the exercise of the power conferred upon the assembly to vacate streets. There is no claim on its part that the common has been abandoned. On the contrary, a part is now used as a park, a use quite consistent with the terms of the dedication, and the plaintiff here is timely in making

his application for relief.   Now, by reference to the plat of this addition, it will be seen that the streets are so laid out as to make a uniform system ; those going from west to east extend throughout the common by well defined lines.   If this common, including the streets thereon, be. longed to individuals, and the city, as it might well do, sought to condemn the property in order to extend the streets to the river and thus perfect the system of streets, the damages awarded, under the charter, would be as- sessed over as benefits against the city at large and against private property on the street.  There is little or no doubt but in that event the plaintiff's property would be largely assessed for the extension of Monroe street. Such assessment against his property would be based alone, upon the theory of special benefits.   If he may be thus specially taxed, for opening the street, we see no reason why he has not got such individual interest as will entitle him to be heard when the street is about to be closed without a shadow of right on the part of the city.   It is a notorious fact that property in our cities depends for its value much upon its street facilities, and hence it is these local assessments are upheld.   These con- siderations with respect to Monroe street are sufficient to give the plaintiff a standing in court, and a right to prosecute this suit.

From the evidence it is as fair to infer that the plaintiff's property would be benefited by devoting the residue of the common (the portion not devoted to streets) to private business, as to infer that it would be thereby damaged.   No evidence as to inconvenience or injury in this respect was adduced ; but, for the reasons before stated, the judgment is affirmed.  All concur.