Ronald **OURS** and **Darlene Ours**, **Ross Melick**, **Jeffrey W. Spencer**, **Grette Herrick**, **David Mejers** and **Meschelle Mejers**, and **James Joiner** and **Verjean Joiner**, **Plaintiffs–Appellants,**

v.

**CITY OF ROLLA**, Missouri, a municipal corporation; **Elwyn E. Wax**, Mayor; **Edward Rothwell**, **Kenneth Smith**, **Gladys Light**, **Ed Owsley**, **Wilton Pointer**, **Susan Eudaly**, **Louis Magdits**, **Mark Rolufs**, **Ray Hovelmann**, **Jim Williams**, **Robin Kordes**, and **Mary Daily**, members of City Council, **Defendants–Respondents.**

No. 21626.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 26, 1998.

Motion for Rehearing and Transfer
Denied March 25, 1998.

Application for Transfer Denied
May 26, 1998.

Lewis C. Green, Bruce A. Morrison, Kathleen G. Henry, Green, Hennings & Henry, St. Louis, for Plaintiffs–Appellants.

John D. Beger, Rolla, for Defendants–Respondents.

PREWITT, Judge.

Plaintiffs sought to enjoin Defendant City of Rolla, its mayor, and city council members from selling property in the city known as Buehler Park. After non-jury trial, judgment was entered determining that Plaintiffs lacked standing to challenge the proposed sale of the park property. The judgment also appeared to decide the matter on the merits, and in it Plaintiffs were denied the relief sought. Plaintiffs appeal.

Review is under Rule 73.01. Under that rule, we affirm the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *In re Marriage of Lafferty,* 788 S.W.2d 359, 361 (Mo. App.1990).

The City acquired the property under a "warranty deed," dated February 28, 1958, from the Rolla Chamber of Commerce, Incorporated. The deed recites that the land is "conveyed to the City of Rolla, Missouri for Park purposes only and none other, and to be known as Buehler Park." Since the conveyance, the land was improved and maintained by the City as a park. On March 3, 1997, the City and Cracker Barrel Old Country Store, Inc. entered into a contract for the sale of the property.

By "corporation quit claim deed," dated April 14, 1997, "the Rolla Area Chamber of Commerce, formerly Chamber of Commerce at Rolla, Missouri, a/k/a Rolla Chamber of Commerce, Incorporated, a pro forma corporation" did "remise, release and forever quit claim" to the city of Rolla the park property. The deed says that its purpose "is to release the restriction that the above described real property be used for park purposes only and be known as Buehler Park," as set forth in the warranty deed referred to above. The quit claim deed further recited that the Chamber "releases any right of entry and any reversionary right it may have in and to the above described real property and releases any right it may have to enforce as a covenant the provision in said deed that said land be used for a park."

On appeal, Plaintiffs contend the trial court erred in determining that they lacked standing to challenge the proposed sale, contending that: "A. As inhabitants and property holders of the city, plaintiffs have standing"; "B. As users of the park, plaintiffs have standing"; "C. As taxpayers, plaintiffs have standing, without proof of special damage, to enjoin the illegal expenditure of public funds." These contentions are discussed in the order set forth.

*A. As inhabitants and property owners of the City of Rolla, Plaintiffs claim they have standing.*

Plaintiffs reside in Rolla and, with one exception, own property there. Standing to sue to challenge the abuse of the public trust requires more than merely being an inhabitant and property holder of the city. "Generally, an individual does not have standing to seek redress of a public wrong, or of a breach of public duty, if such individual's interest does not differ from that of the public generally, even though the complainant's loss is greater in degree than that of other members of the public." *Hinton v. City of St. Joseph,* 889 S.W.2d 854, 859 (Mo. App.1994).

In *Hinton,* nearby property owners sought to prevent the sale of property conveyed to

St. Joseph for recreational purposes, never developed by the City. The property in *Hinton* was dedicated "not for the purpose of benefiting residents of plaintiffs' neighborhood. Rather, the dedication was specifically for the general citizenry of [the city]. As citizens, plaintiffs have no greater enforcement right than any other citizen." *Id.* Similarly, Buehler Park was not dedicated for the purpose of benefiting the Plaintiffs' neighborhoods, but the general citizenry of the City of Rolla.[1]

In *Hinton*, the court further noted that the "traditional rule is that no person other than the attorney general or the dedicator (or one claiming under the dedicator) may challenge the diversion of dedicated property unless the claimant has a substantial special injury, usually an economic injury ..." *Id.* at 859. The Rolla Chamber of Commerce deeded the property, but did not challenge the action of the City.

In *Cummings v. City of St. Louis*, 2 S.W. 130, 90 Mo. 259 (1886), the court granted standing to plaintiffs who were owners of property contiguous to the public property in question. Being owners of such contiguous property, however, was not the sole basis for standing. The plaintiffs in that case had to first prove that they would suffer an injury to his or her individual rights. *Cummings*, 2 S.W. at 132. Plaintiffs in the instant case have testified that they will no longer be able to enjoy the scenery, shade, and playground at Buehler Park if the planned sale and development is allowed to occur. These injuries are no different than the injuries which would be suffered by the public as a whole, and hence do not show that the Plaintiffs will suffer an injury to his or her individual rights.

Plaintiffs have shown no special injury related to the challenged action, hence they do not have standing to sue based upon the fact that they are inhabitants and property owners of the City of Rolla.

*B. As users of Buehler Park, Plaintiffs claim they have standing.*

■ Plaintiffs assert: "In the case of a dedication, the users have standing." Plaintiffs are correct in their statement that *Hinton* does "nothing to undermine the standing of users" of public land because the plaintiffs in that case did not claim to be users of the public land. It must first be established, however, that "users" of a park do have standing. Citizens who have "an interest in the maintenance of a public use" have been granted standing. *See Tracy v. Bittle*, 112 S.W. 45, 49, 213 Mo. 302 (1908). In *Tracy*, the plaintiffs had a number of immediate relatives buried in the graveyard subject to the lawsuit. The court held that those plaintiffs did have a peculiar right in the maintenance of the land as a cemetery, and found them to have standing. There is no similar interest by the plaintiffs in this case.[2]

Plaintiffs have not established standing based upon use of Buehler Park because they failed to show a sufficient interest in the maintenance of the land as a park.

*C. Standing based upon Plaintiffs' status as taxpayers.*

■ Taxpayer standing requires that the plaintiff demonstrate a direct expenditure of funds generated through taxation, an increased levy of taxes, or a pecuniary loss

---

1. The plaintiffs in *Hinton* contended special injury in that they were near neighbors to the property and could see the land from their property. The court noted that plaintiffs' concerns were the type normally addressed in zoning decisions, and that there was "no financial interest claimed other than the assertion that development of the land may affect their property values" and that plaintiffs property values would not suffer substantially more than other home owners in the vicinity. *Hinton*, 889 S.W.2d at 859–860.

2. Plaintiffs cite two other cases to support their position of standing based upon use of the park: *Coffey v. State ex rel. County of Stone*, 893 S.W.2d 843 (Mo.App.1995), and *Whittom v. Alexander–Richardson Partnership*, 851 S.W.2d 504 (Mo. banc 1993). Plaintiffs did not explain why these cases are favorable to their position, merely stating that "the use of the park by plaintiffs [is] sufficient to confer standing." This Court has determined that neither case supports Plaintiffs' position, as both cases were decided on issues of common law dedication of roadways. Neither cases directly discusses the issue of standing. Awarding the public use of land acquired through common law dedication and predicating standing upon the right to use are not equivalent.

caused by the challenged transaction. *Hinton*, 889 S.W.2d at 857. Merely being a taxpayer is not enough to confer standing to bring an action against a municipality. *Pace Construction v. Mo. Hwy. & Transp. Comm'n*, 759 S.W.2d 272, 275 (Mo.App.1988).

Evidence in this case indicated that the only expenditures by the City related to the sale of Buehler Park were salaries for staff time of City employees, correspondence and telephone calls, and the payment of a real estate commission.

Such salaries are not the type of expenditure of public funds which would give standing, as they are general operating expenses which would be incurred whether or not the challenged transaction took place. *See Mid–America Georgian Gardens, Inc. v. Missouri Health Facilities Review Committee*, 908 S.W.2d 715, 718 (Mo.App.1995).

Cases which have held that staff expenses were an unlawful expenditure of public funds were cases in which the underlying law was being challenged and ultimately found to be unconstitutional or otherwise void. *See O'Reilly v. City of Hazelwood*, 850 S.W.2d 96, 98 (Mo. banc 1993), and *Missouri Coalition for the Environment v. Joint Committee on Administrative Rules*, 948 S.W.2d 125 (Mo. banc 1997).

No evidence was presented in this case showing that the real estate broker's commission was to be paid if the sale did not occur. Real estate sales commission are normally paid out of the sale proceeds and we assume that to be true in this instance. The payment of the commission was therefore in no way a pecuniary loss attributable to the sale of Buehler Park, nor was it a direct expenditure of funds generated through taxation.

■ Allegations and proof of the illegal expenditure of public funds or the prospect of such illegal expenditures is an essential element to grant taxpayer standing. *See Worlledge v. City of Greenwood*, 627 S.W.2d 328, 331 (Mo.App.1982). Here, Plaintiffs have not shown an illegal expenditure of public funds, nor that such is about to occur.

As Plaintiffs do not have standing to bring this action, the trial court's judgment is affirmed.

CROW, J., concurs.

GARRISON, P.J., files dissenting opinion.

GARRISON, Presiding Judge, dissenting.

I respectfully dissent. Although the majority opinion does not discuss whether there was a dedication of the Buehler Park property, I believe that it was, in fact, dedicated to the public. I also believe that Plaintiffs have standing to maintain their suit.

The trial court found that the 1958 "Warranty Deed" did not dedicate the park property to public use because "it does not require the property to be used as a park 'forever' or words to that effect." The trial court also found that prior to the quit claim deed from the Chamber of Commerce, the City held the property subject to a defeasible fee, and not in trust subject to a dedication to public use, because the language of the Warranty Deed "restricts [the City's] use of the property to 'park purposes only and none other' with the implication that should [the City's] use of the property as a park cease, the grantor would retain the right to reenter and claim its interest in the property."

Plaintiffs contend that the trial court erred in reaching this conclusion. I agree. A party who seeks to prove a common law dedication must show that the owner of the property, by unequivocal action, intended to dedicate it to public use; that the property dedicated was accepted by the public; and that the dedicated property is used by the public. *Whittom v. Alexander–Richardson Partnership*, 851 S.W.2d 504, 507–08 (Mo. banc 1993); *State ex rel. Missouri Coalition for the Environment v. Conservation Commission*, 940 S.W.2d 527, 530 (Mo.App. W.D. 1996). The City concedes that Plaintiffs have satisfied the latter two requirements of this test, in that the City has accepted the putative dedication by maintaining the park for nearly forty years, and that the public has used the park. As to the first element, however, the City argues that Plaintiffs have not proved that the Chamber of Commerce

intended to dedicate the park property to public use.

The acts establishing a dedication must be unequivocal, and indicate expressly or by plain implication a purpose to create a right in the public to use the land. *Whittom*, 851 S.W.2d at 508. Even when the owner has no actual intention to dedicate the property, his conduct may nonetheless evince such an intention. *Id.* In this situation, the owner can be prevented from resuming rights over the property if the public has relied upon his manifestations. *Id.*

In the instant case, the "Warranty Deed" states that the park property "is conveyed to the City of Rolla, Missouri for Park purposes only and none other, and to be known as Buehler Park." It continues, "TO HAVE AND TO HOLD the premises aforesaid ... FOREVER." This language unambiguously transfers the park property to the City "forever." The language of this deed is inconsistent with the trial court's conclusion of a defeasible fee by "implication." *See Hand v. St. Louis*, 158 Mo. 204, 59 S.W. 92 (1900).

The deed restricts the City's use of the property to "park purposes," going so far as to bestow a name on the park. Inferably, the park contemplated in the deed is one to be used by the public, as the City is a public entity. The intent of the Chamber of Commerce to dedicate the park property to public use is clear from the language of the deed. The absence of the words "dedicate" or "dedication" from the instrument, or its title, "Warranty Deed," do not negate this intent. *See Coffey v. State ex rel. County of Stone*, 893 S.W.2d 843, 844–47 (Mo.App. S.D.1995). I believe, therefore, that the property was dedicated to public use.

Dedication is based upon the theory of a contract between the dedicator and the public that is binding on both parties. *City of St. Louis v. Bedal*, 394 S.W.2d 391, 396 (Mo. 1965). A common law dedication is a continuous, irrevocable offer to dedicate, which the dedicator cannot retract. *Moseley v. Searcy*, 363 S.W.2d 561, 563 (Mo.1962). The theoretical basis of this "contract" is estoppel, rather than an affirmative grant. *Whittom*, 851 S.W.2d at 508. While a dedicator generally cannot revoke a dedication, the dedicated

property can revert to him or to his successors if it is no longer possible to use the property for the dedicated purpose or if the dedicated use of property has been legally abandoned. *Moseley*, 363 S.W.2d at 564–65. Impossibility of a dedicated use and abandonment often have equivalent meanings. *Id.* at 565–66. In the instant case, there has been no abandonment of the property, and there is no suggestion that any facts or circumstances exist which would make its continued use as a park impossible. There is also a lack of evidence that continued use of the property for park purposes would be damaging to the public good, as might be the case if it were frequently used for unlawful activities which are detrimental to the public, or located on the site of a former landfill where toxic chemicals were deposited, for example.

Consistent with the contractual basis of dedication is the proposition, long accepted by Missouri courts, that property dedicated for a particular purpose cannot be diverted to a different purpose. *Kirkwood v. City of St. Louis*, 351 S.W.2d 781, 784 (Mo.1961); *Cummings v. City of St. Louis*, 90 Mo. 259, 264, 2 S.W. 130, 131 (1886); *Price v. Thompson*, 48 Mo. 361, 365–66 (1871); *Village of Climax Springs v. Camp*, 681 S.W.2d 529, 534 (Mo.App. S.D.1984). The efficacy of this rule depends on who has standing to enforce it, the central issue of this appeal.

To have standing to bring an action for injunctive relief, a plaintiff must have a legally protectable interest at stake. *Phillips v. Mo. Dept. of Social Services*, 723 S.W.2d 2, 4 (Mo.banc 1987). A legally protectable interest is a pecuniary or personal interest directly in issue or jeopardy that is subject to some consequential relief, immediate or prospective. *Id.* Standing to challenge the diversion of dedicated property typically lies only with the attorney general, the dedicator, or one claiming under the dedicator. *Hinton v. City of St. Joseph*, 889 S.W.2d 854, 859 (Mo. App. W.D.1994). Any other plaintiff must show that he has a substantial special injury, usually an economic injury, that gives him standing to enforce the dedication. *Id. See also Cummings*, 90 Mo. at 264, 2 S.W. at 132.

In holding the Plaintiffs lack standing to maintain this suit, the majority relies primarily on *Hinton*. There, the court held that citizens opposing the sale to a retail chain of property dedicated for park and recreational purposes had no standing to challenge the transaction. *Id.* at 860. There, as here, the dedicator did not contest the diversion of the property from its dedicated use, but rather actively supported the sale. Unlike the instant case, however, the city had allowed the dedicated land lie vacant for 22 years, and never developed it in a way consistent with the dedicated purpose. Nor did any of the plaintiffs purport to use the property as a park or recreation area. They instead based their claim of standing on their prediction that their properties, all located near the disputed site, would decrease in value if the dedicated property were sold and developed as a retail store. *Id.* at 856–57. The court observed that the "plaintiffs may purport to act in the interest of the general public, [but] the nature of their claim and the relief they seek shows that they are seeking to protect their own unique individual interests, which the public does not share generally." *Id.* at 861.

In contrast, the *Hinton* court cited *Parsons v. Walker*, 28 Ill.App.3d 517, 328 N.E.2d 920 (1975), as an example of a situation in which citizens would have standing to enforce a dedication. 889 S.W.2d at 860. In *Parsons*, citizens brought suit to preserve a park which had been dedicated to, and operated by, the University of Illinois for 28 years. The University was attempting to divert the property to a federal reservoir project, which would have resulted in the destruction of the park. The court held that the citizen-plaintiffs had standing to maintain their action, because the dedication had created a "public trust" in the park, which they had an interest in preserving. 328 N.E.2d at 926–27. It noted the importance of ordinary citizens in enforcing public trusts, saying, "If the 'public trust' doctrine is to have any meaning or vitality at all, the members of the public, at least taxpayers who are the beneficiaries of that trust, must have the right and standing to enforce it. To tell them that they must wait upon governmental action is often an effectual denial of the right for all time." *Id.* at 926.

Under the majority's holding in the instant case, the Plaintiffs, and the general public by extension, have no practical means of enforcing the dedication of Buehler Park. If a dedication is a "contract" between the dedicator and the public, it is meaningless if the public cannot enforce it. If the entities who traditionally have the authority to enforce dedicated uses of public property do not do so, the public who use the facilities should have standing to present the issue to the courts. I would hold that there was a dedication of the property in the instant case, and that Plaintiffs have standing to maintain the instant suit.