CITIZENS FOR THE PRESERVATION OF BUEHLER PARK, Thomas J. Sager, Linda Marie Novak, Phillip D. Lampert, Edie Gale Hayes, Neil Elfrink, Linda S. Gaddy, April L. Gaddy and Eileen Lunsford, Plaintiffs–Appellants,

v.

CITY OF ROLLA, Missouri, Joseph E. Morgan, Monty Jordan, Terry Ruck, Matthew Z. Williams, Donald Z. Barklage, Jim Rolufs, Harry Kiefer, Judy Jepsen, Louis Magdits, Jim Williams, Jim Waterman, Richard D. Sibley and Charlotte Wiggins, Defendants–Respondents.

No. 27130.

Missouri Court of Appeals,
Southern District,
Division One.

April 12, 2006.

Bruce A. Morrison, Kathleen G. Henry, St. Louis, for Appellants.

John D. Beger, Rolla, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Before us is a case in which Appellants, citizens of Rolla, Missouri, sought to enjoin Respondents, the City of Rolla, Missouri ("the City"), from selling property in the city known as Buehler Park.[1] This is the second time a group of citizens has sought to enjoin the City from selling Buehler Park. *See Ours v. City of Rolla ("Buehler Park I")*, 965 S.W.2d 343 (Mo.App. S.D. 1998); *see also Ours v. City of Rolla*, 14 S.W.3d 627 (Mo.App. S.D.2000) (reversing the award of damages on the bond for the initial injunction due to an improper measure of damages).

The facts as set out in *Buehler Park I* indicate the City acquired the property from the Rolla Chamber of Commerce by a warranty deed in 1958. *Id.* at 344. The deed stated that the land is " 'conveyed to the City of Rolla, Missouri for Park purposes only and none other, and to be known as Buehler Park.' " *Id.* Since that conveyance, the land had been improved and maintained by the City as a park; however, on March 3, 1997, the City and Cracker Barrel Old Country Store, Inc. entered into a contract for the sale of the park property. *Id.* "By 'corporation quit

claim deed,' dated April 14, 1997, 'the Rolla Area Chamber of Commerce, . . . Incorporated, a pro forma corporation' did 'remise, release, and forever quit claim' to the [City] the park property." *Id.* The deed said its purpose was " 'to release the restriction that the above described real property be used for park purposes only and be known as Buehler Park.' " *Id.* The quit claim deed further stated that the Chamber " 'release[ed] any right of entry and any reversionary right it may have in and to the above described real property and releases any right it may have to enforce as a covenant the provision in said deed that said land be used for a park.' " *Id.*

The trial court held, and this Court affirmed the holding, in *Buehler Park I* that the citizens lacked standing to challenge the proposed sale of the park property. *Id.* at 346. This Court found that as inhabitants and property holders of the city, the citizens were unable to show that their injuries as a result of the sale would be any different from the injuries suffered by the public as a whole. *Id.* at 345. This Court further found that the citizens did not have standing as users of the park because they did not have a sufficient interest in the maintenance of the land as a park to warrant standing. *Id.* Finally, this Court found no standing as taxpayers because the expenditures made by the City in relation to the sale of the park only included salaries for staff time of city employees, correspondence and telephone calls, and the possible payment of a real estate commission. *Id.* at 346. We found these expenditures not to be the type to bestow standing because they were general operating expenses, which would be incurred whether or not the challenged

---

1. Respondents filed a motion to dismiss the appeal, which was taken with this case; the motion is overruled.

transaction took place. *Id.* Specifically, this Court found that the citizens did not present evidence that the real estate broker's commission would be paid out of city funds, nor did they show an illegal expenditure of public funds. *Id.*

The sale that brought the appeal in *Buehler Park I* did not occur and, presumably, the park remained as a park until the current efforts by the City to sell Buehler Park for development as a restaurant district. A group of citizens filed a petition alleging that they were individual plaintiffs who pay taxes and are frequent users of the park. The petition sought a declaratory judgment that the City had no lawful authority at this time to sell, transfer, or convey Buehler Park for use as a restaurant district and sought to enjoin the City from alienating the park. The court sustained the motion to dismiss for lack of standing. The citizens now appeal.

The citizens alleged that the proposed listing for sale is different from the proposed sale in 1997 because the City is expending public funds including, but not limited to, funds for advertising and mailing requests, expenditures that go beyond the "general operating expenses which would be incurred whether or not the challenged transaction took place" and, therefore, they have taxpayer standing. They further alleged that the City holds Buehler Park in trust for the use and benefit of the public and the City has no legal authority to sell or alienate Buehler Park. In its motion to dismiss, the City argued that, based on *Buehler Park I*, the citizens have no standing to bring the cause of action; it further argued that the petition was barred by the doctrine of res judicata in that the same issues were fully and fairly litigated by the same citizens, or their predecessors in interest, against the same defendants, or their predecessors in office.

 Noting that the trial court granted the motion to dismiss on the basis that the citizens did not have standing and with no evidentiary hearing on the facts in the allegation, we reverse the ruling of the trial court and remand for further proceedings. We review an order sustaining a motion to dismiss assuming all facts alleged in the petition are true, and the "plaintiff is given the benefit of every reasonable intendment." *Dent Phelps R–III School Dist. v. Hartford Fire Ins. Co.,* 870 S.W.2d 915, 917 (Mo.App. S.D.1994). When a trial court grants a motion to dismiss without explicitly stating the reasons for dismissal, we assume the trial court acted for reasons offered in the motion to dismiss. *See In re Marriage of Peck,* 947 S.W.2d 82, 85 (Mo.App. S.D. 1997); *Austin v. Trotters Corp.,* 815 S.W.2d 951, 957 (Mo.App. S.D.1991).

 We find the trial court erred in its ruling on the motion to dismiss that the citizens had no standing. Understanding that the trial court relied upon *Buehler Park I* in making that determination, we look to the holding of *Buehler Park I* to ascertain whether this second group of citizens is indeed bound by that decision. Initially, it is important to reiterate that the sale and the facts that brought *Buehler Park I* to this Court's attention did not occur.[2] It is also important to note that in *Buehler Park I,* this Court did not specifically address the issue of whether a dedication of the park had occurred.[3] This

---

**2.** In fact, prior to the appeal, Cracker Barrel " 'withdrew' from its contract with the City." *Ours,* 14 S.W.3d at 628.

**3.** The dissent in *Buehler Park I* found: (1) a dedication to the public of the Buehler Park property existed; and (2) because a dedication existed, the citizens had standing. *Buehler Park I,* 965 S.W.2d at 346 (Garrison, P.J., dissenting).

Court, based on the evidence of that case, found that the only expenditures by the City related to the sale of the park were salaries for staff time of city employees, correspondence and telephone calls, and the possible payment of a real estate commission. *Buehler Park I,* 965 S.W.2d at 346. We maintained that "[a]llegations and proof of the illegal expenditure of public funds or the prospect of such illegal expenditures is an essential element to grant taxpayer standing." *Id.* The citizens did not present evidence that the real estate broker's commission would be paid out of city funds or show an illegal expenditure of funds. *Id.* The City maintains that the holding of *Buehler Park I* forever bars any citizen group from challenging the alienation of Buehler Park from the City for any reason. That is not so. The City is not free to dispose of Buehler Park in any manner it chooses without regard to the expenditure of public funds or the prospect of illegal expenditures.

■ Taxpayers have an unquestionable right to bring an action to enjoin the illegal expenditure of public funds. *Eastern Missouri Laborers Dist. Council v. St. Louis County,* 781 S.W.2d 43, 46 (Mo. banc 1989). The need for taxpayer suits "arises from the need to ensure that government officials conform to the law." *Id.* An indispensable need exists "to keep public corporations, their officers, agents and servants strictly within the limits of their obligations and faithful to the service of the citizens and taxpayers." *Id.* "Absent fraud or other compelling circumstances, to have standing a taxpayer must be able to demonstrate a direct expenditure of funds generated through taxation, or an increased levy in taxes, or a pecuniary loss attributable to the challenged transaction of a municipality." *Id.* at 47. Taxpayers only

need to show that "taxes went or will go to public funds that have been or will be expended due to the challenged action." *O'Reilly v. City of Hazelwood,* 850 S.W.2d 96, 98 (Mo. banc 1993); *see also National Solid Waste Mgmt. Ass'n v. Director of the Dept. of Natural Resources,* 964 S.W.2d 818, 819 (Mo. banc 1998).

■ In fact, the Supreme Court of Missouri has held that taxpayers have standing to challenge the legality of expenditures even where the expenditures create economic gain for the state rather than loss. *See Tichenor v. Missouri State Lottery Comm'n,* 742 S.W.2d 170, 172 (Mo. banc 1988); *see also Harris v. Missouri Gaming Comm'n,* 869 S.W.2d 58, 60 (Mo. banc 1994). In *Missouri Coalition for the Env't. v. Joint Comm. on Admin. Rules,* 948 S.W.2d 125 (Mo. banc 1997), the court found that taxpayers had standing when the stipulation of facts in the case illustrated that the Joint Committee on Administrative Rules ("JCAR"), a legislative committee, had illegally disapproved rules that various agencies had proposed, an executive function in nature. *Id.* at 132. The statute creating the JCAR provided that members of the JCAR would receive compensation for expenses incurred while attending meetings. *Id.* Compensation was paid out of a joint contingent fund provided through statute and this demonstrated that public funds had been expended to compensate members of the JCAR; therefore, the court found taxpayers had standing. *Id.*

The court's reliance on *Buehler Park I* to grant the motion to dismiss was improper. For the purpose of ruling on a motion to dismiss, we must assume all the facts alleged in the petition are true. On remand, the court must decide whether the attempted alienation of the park from the

City is a legal or illegal expenditure and whether the citizens have evidence to support a claim of illegal expenditures of public funds or the prospect of such illegal expenditures based upon evidence. We reverse the dismissal of the action and remand for further proceedings consistent with this opinion.

PARRISH and LYNCH, JJ., concur.