

# IN THE MISSOURI COURT OF APPEALS WESTERN DISTRICT

EMANUEL MATTHEWS, ET AL., )
)
Appellants, )
)
v. ) WD85267 (Consolidated with WD85409)
)
HARLEY DAVIDSON, ET AL., ) Opinion filed: May 2, 2023
)
Respondents. )

**APPEAL FROM THE CIRCUIT COURT OF
PLATTE COUNTY, MISSOURI
THE HONORABLE ANN HANSBROUGH, JUDGE**

Division One: Anthony Rex Gabbert, Presiding Judge,
W. Douglas Thomson, Judge and Janet Sutton, Judge

William Douglas, Markita Edelen, Frank Edwards, Antonio Gentry, Amour Harris, Demetrius Johnson, Belinda Rolls, Emel Smith, Rochelle Smith, Ulysses Smith, and Estella Tucker (collectively, "Appellants") appeal from the trial court's dismissal of Appellants from Counts IX (race discrimination), XI (hostile work environment), XII (aiding and abetting against Defendant Harley-Davidson Motor Company), and XIII (aiding and abetting against Defendant Syncreon.US) of their amended petition against Defendants Harley-Davidson Motor Company (Harley-Davidson) and Syncreon.US ("Syncreon"). On appeal, Appellants argue that the

trial court erred in dismissing them from Counts IX and XI because they properly stated a claim for a hostile work environment. Appellants also argue the trial court erred in dismissing them from Counts XII and XIII because they properly stated claims for aiding and abetting discrimination under Section 213.070.1(1), RSMo.[1] Finally, Appellants argue that, even if they failed to state a claim for a hostile work environment, they properly stated claims for aiding and abetting discrimination, because such claims do not require an underlying discrimination claim. Because we find that Appellants have properly stated claims for race discrimination and hostile work environment, we reverse and remand for further proceedings.

## Factual and Procedural History[2]

This case stems from race discrimination allegations brought by eighteen Black plaintiffs against their employers, Harley Davidson and Syncreon,[3] that allegedly occurred at a Harley Davidson plant (the "Plant") in Kansas City, Missouri. This appeal involves the dismissal of eleven of those plaintiffs, Appellants, for failure to state claims.

---

[1] All statutory citations are to RSMo 2018 as currently updated unless otherwise noted.

[2] "When this Court reviews the dismissal of a petition for failure to state a claim, the facts contained in the petition are treated as true and they are construed liberally in favor of the plaintiffs." *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008). Accordingly, the facts are taken from Appellants' first amended petition and exhibits attached thereto. Because we assume the facts in the light most favorable to the plaintiff, this opinion should not be read as making factual findings binding upon remand.

[3] Syncreon's legal name is "syncreon.us." For ease of reading, we refer to Syncreon as a proper noun with a capitalized 's.'

**Factual Allegations**

Until May 24, 2019, Harley Davidson operated the Plant to manufacture and assemble various Harley Davidson merchandise. Syncreon provided contract workers to the Plant. Appellants allege that they were jointly employed by Harley Davidson and Syncreon at all relevant times. Harley Davidson's employees were approximately 90% White, while Syncreon's employees were approximately 90% Black. Appellants allege that, before the Plant's closing, "multiple incidents with racial overtones took place" at the Plant. Among these incidents, Appellants allege that Syncreon hired a White man to supervise its employees, even though Harley Davidson had terminated that man for discriminating against Black employees; the Plant was physically divided such that Harley Davidson employees were separated from the Syncreon employees by a borderline in the Plant the Harley Davidson employees could cross but the Syncreon employees were prohibited from crossing; Harley Davidson and Syncreon employees had separate bathrooms and Syncreon employees were prohibited from using the Harley Davidson bathroom; and racially motivated insults were common at the Plant.

Appellants also allege that more specific incidents occurred at the Plant. In June or July 2017, a noose was found in a women's bathroom. In April 2018, a swastika and a doll of a Black woman hanging by a noose were also discovered in the women's bathroom. In November 2018, a plaintiff not part of this appeal was assaulted by a White male coworker who was never disciplined for the incident. In December 2018, in the presence of unnamed Black employees, a White employee

showed her coworkers a family photo that included confederate flags and people depicting racist signs.

In both January and February 2019, racist graffiti again appeared in a bathroom used by Syncreon employees, and unnamed, non-party, Black Syncreon employees complained about the graffiti. In February 2019, a remaining (i.e., not dismissed) plaintiff, Ervin Foster, discovered a noose while working and complained to management. A different unnamed Syncreon employee saw a supervisor cut up the noose. Appellants also allege that neither Harley Davidson nor Syncreon took any disciplinary action based on any of the conduct described above.

**Procedural History**

The Plant closed on May 24, 2019. Just before the Plant's closing, on May 16, 2019, each of the Appellants filed a complaint with the Missouri Commission on Human Rights (MCHR). The Appellants' MCHR complaints are identical and the allegations contained therein mirror the allegations in the amended petition.

Appellants received their right to sue letter from MCHR and filed their initial petition. After each defendant filed partial motions to dismiss, Appellants filed an amended petition on March 19, 2021. The amended petition contains 13 counts against Harley Davidson, Syncreon, and a Harley Davidson employee, John Soulis.[4] Appellants are named in four counts: Count IX (race discrimination

---

[4] None of the Appellants have claims against John Soulis, and thus he is not named in this appeal.

against Harley Davidson and Syncreon), Count XI (hostile work environment against Harley Davidson and Syncreon), Count XII (aiding and abetting against Harley Davidson), and Count XIII (aiding and abetting against Syncreon). Appellants attached as exhibits to the amended petition their complaints to the MCHR.

In response to the amended petition, both Harley-Davidson and Syncreon filed partial motions to dismiss, arguing in part that all of Appellants' Counts IX, XI, XII, and XIII fail to allege facts sufficient to state those claims. On August 27, 2021, the trial court entered a docket order stating in part,

> This Court, having read briefing in support of, and in opposition to, Defendant Harley-Davidson Motor Company Operation, Inc.'s Partial Motion to Dismiss Plaintiffs' Amended Petition; Defendant Syncreon.US, Inc.'s Partial Motion to Dismiss Plaintiffs' Amended Petition...and having heard argument of counsel, hereby: GRANTS Defendant Harley-Davidson's and Syncreon's Motions to Dismiss Counts IX and XI as to Plaintiffs Dawson, Douglas, Edelen, Edwards, Gentry, Harris, Johnson, Rolls, Rochelle Smith, Emel Smith, Ulysses Smith, and Tucker; DENIES Defendant Harley-Davidson's Motion to Dismiss Counts XII; and DENIES Defendant Syncreon's Motion to Dismiss Count XIII.

Thereafter, on September 10 and September 13, 2021, respectively, Harley-Davidson and Syncreon filed separate motions for clarification of the trial court's August 27 order. In both motions, Harley-Davidson and Syncreon sought clarification of the trial court's denial of their motions to dismiss Counts XII and XIII respectively, because, they argued, "a viable discrimination claim is a prerequisite to a claim of aiding and abetting discrimination." Because Appellants' discrimination claims were dismissed by the trial court, Harley-Davidson and

Syncreon sought clarification as to the scope of the trial court's denial of their motions to dismiss Counts XII and XIII.

On March 15, 2022, the trial court entered an Order of Clarification Regarding August 27, 2021, Docket Text Order. The trial court stated: "that the Court's August 27, 2021 docket text Order was inadvertently incomplete with respect to the Court's decision as to Defendants' motions to dismiss to [sic] Counts XII and XIII of the Amended Petition." The trial court clarified its docket order to read,

> DENIES Defendant Harley-Davidson's Motion to Dismiss Count XII as to Plaintiffs Baines, Foster, Ginn, Griffith, Matthews, Muhammad and Robertson, and GRANTS Dismiss of Count XII as to all other Plaintiffs; and DENIES Defendant Syncreon's Motion to Dismiss Count XIII as to Plaintiffs Baines, Foster, Ginn, Griffith, Matthews, Muhammad and Robertson and GRANTS Dismissal of Count XIII as to all of Plaintiffs.

On April 29, 2022, the trial court entered its "Final Judgment Dismissing Claims of Plaintiffs Douglas, Edelen, Edwards, Gentry, Harris, Johnson, Rolls, Rochelle Smith, Emel Smith, Ulysses Smith, and Estella Tucker" (hereinafter, the "Judgment") and certified the Judgment as final pursuant to Rule 74.01(b).[5] This appeal follows.

## Jurisdiction to Decide this Appeal

In this case, the trial court certified its judgment as appealable under Rule 74.01(b), and none of the parties question the trial court's authority to do so.

___

[5] All rule references are to the Missouri Rules of Civil Procedure (2020) unless otherwise indicated.

However, we must *sua sponte* determine whether we have jurisdiction over this appeal. *See Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997).

In order to be appealable, a judgment must be final. *Id.* "If the trial court's judgments are not final, this Court lacks jurisdiction and the appeals must be dismissed." *Id.* Generally, "[a]n appealable judgment resolves all issues in a case, leaving nothing for future determination." *Id.*

Rule 74.01(b) "provides an exception to this 'finality rule' for cases with multiple claims." *Id.* Rule 74.01(b) states:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

A trial court, like the trial court did here, "may enter judgment on less than all claims and certify that there is 'no just reason for delay.'" *Gibson*, 952 S.W.2d at 244. "The designation by a trial court that its order is final and appealable is not conclusive." *Id.* Rather, the content and effect of the order determines whether it is final and appealable. *Id.* To be appealable, the trial court's order must dispose of a distinct "judicial unit." *Id.*

7

In *Wilson v. City of St. Louis*, 600 S.W.3d 763, 69 (Mo. banc 2020), the Court summarized the requirements of a final judgment under Rule 74.01(b) thusly,

> First, it must be a judgment (i.e., it must fully resolve at least one claim in a lawsuit and establish all the rights and liabilities of the parties with respect to that claim). Second, it must be "final," either because it disposes of all claims (or the last claim) in a lawsuit, or because it has been certified for immediate appeal pursuant to Rule 74.01(b). A judgment is eligible to be certified under Rule 74.01(b) only if it disposes of a "judicial unit" of claims, meaning it: (a) disposes of all claims by or against at least one party, or (b) it disposes of one or more claims that are sufficiently distinct from the claims that remain pending in the circuit court.

*Id.* at 771.

Whether an order satisfies the requirements of Rule 74.01(b) is a question of law, and the trial court has no discretion in determining whether or not a judgment is eligible for certification under Rule 74.01(b). *Id.* "[O]nly the question of whether an eligible judgment should be certified under Rule 74.01(b) is left to the sound exercise of the circuit court's discretion." *Id.*

We must determine whether the trial court's Judgment satisfies the requirements of Rule 74.01(b). We find that it does. The Judgment dismissed all of Appellants' claims against Harley-Davidson and Syncreon, meaning it disposed of all claims by some – but not all – of the parties. *See Wilson*, 600 S.W.3d at 769. The Appellants have no further pending claims before the trial court in the underlying action. Thus, the Judgment disposed of a "judicial unit" by dismissing *all* of the claims of *some* of the plaintiffs. As a matter of law, Rule 74.01(b) allows

the trial court to exercise its discretion in certifying the Judgment as final and appealable.

Next, we must determine whether the trial court abused its discretion in certifying the Judgment under Rule 74.01(b). We see nothing in this record supporting the conclusion that the trial court abused its discretion in certifying the judgment pursuant to Rule 74.01(b).

Having determined we have jurisdiction over this appeal, we next turn to the merits.

**Standard of Review**

This Court reviews a trial court's sustaining of a motion to dismiss *de novo*. *Mitchell v. Phillips*, 596 S.W.3d 120, 122 (Mo. banc 2020). "[T]he petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 306 (Mo. banc 1993).

"'A motion to dismiss for failure to state a claim on which relief can be granted is solely a test of the adequacy of the petition.'" *Mitchell*, 596 S.W.3d at 122 (quoting *Cope v. Parson*, 570 S.W.3d 579, 583 (Mo. banc 2019)). This Court will also consider all exhibits attached to the petition. Rule 55.12. In considering whether a petition states a claim upon which relief can be granted, "'this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader.'" *Mitchell*, 596 S.W.3d at 122-23 (quoting *Cope*, 570 S.W.3d at 583). At this stage, this Court

cannot determine the merits of a claim; rather, this Court determines only whether the pleaded facts are sufficient to state a cognizable cause of action or claim for relief. *Id.* at 122. "If the petition sets forth any set of facts that, if proven, would entitle the plaintiffs to relief, then the petition states a claim." *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008).

## Analysis

Appellants bring three points on appeal. First, they argue the trial court erred in dismissing Counts IX and XI alleging race discrimination and a hostile work environment because they properly pled those claims. In Point II, they argue that the trial court erred in dismissing their aiding and abetting claims in Counts XII and XIII because the court erroneously applied the law for stating an aiding and abetting claim. Finally, Appellants argue that even if they failed to state a claim for race discrimination or hostile work environment, the trial court erred in dismissing their aiding and abetting claims because the MHRA allows such claims when a party "attempts" to aid and abet discrimination, thus, an underlying discrimination claim is not necessary to state a claim for aiding and abetting discrimination.

We find that Appellants properly stated claims for race discrimination and hostile work environment. Because the trial court's dismissal of Appellants' aiding and abetting claims was based on its dismissal of their discrimination and hostile work environment claims, our determination on Point I is dispositive.

**Point I**

In Point I, Appellants challenge the trial court's dismissal of both Count IX (race discrimination) and Count XI (hostile work environment). Missouri is a fact-pleading state. *Charron v. Holden*, 111 S.W.3d 553, 555 (Mo. App. W.D. 2003). "The role of pleadings in Missouri is to 'identify facts upon which the plaintiff's claim rests." *Thomas v. Denney*, 453 S.W.3d 325, 332 (Mo. App. W.D. 2014) (quoting *ITT Comm. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993)). "Under Missouri pleading rules, to state a claim, a petition must invoke substantive principles of law entitling the plaintiff to relief and allege ultimate facts informing the defendant of what the plaintiff will attempt to establish at trial." *Charron*, 111 S.W.3d at 555 (citing *Bracey v. Monsanto Co.*, 823 S.W.2d 946, 951 (Mo. banc 1992)). "'Ultimate facts are those the jury must find to return a verdict for the plaintiff.'" *Richest v. City of Kansas City*, 643 S.W.3d 610, 614 (Mo. App. W.D. 2022) (quoting *R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist.*, 568 S.W.3d 420, 425 (Mo. banc 2019)).

We address each cause of action that the trial court dismissed in turn, beginning with Appellants' claims for hostile work environment.

**Hostile Work Environment**

To plead a claim for hostile work environment, the Appellants must allege facts showing: (1) they are members of a protected group under the Missouri Human Rights Act; (2) they were subjected to unwelcome harassment; (3) their membership in the protected group was a motivating factor in the harassment; and

(4) a term, condition, or privilege of their employment was affected by the harassment. *See Eivins v. Mo. Dep't of Corrections*, 636 S.W.3d 155, 179 (Mo. App. W.D. 2021).

Here, Appellants have alleged in their pleadings that each of them is Black, and thus they are members of a protected group under the MHRA. In doing so, they have sufficiently pled the first element of a hostile work environment claim.

Next, we turn to whether Appellants have sufficiently pled that they were subjected to unwelcome harassment, and thereby meet the second element of a hostile work environment claim. In this regard, Appellants allege that the Plant included racially segregated bathrooms, and the majority-Black Syncreon employees were not permitted to use the bathrooms designated for the majority-White Harley-Davidson employees. They allege the bathrooms that the majority-Black Syncreon were required to use were at times defaced with various racially-derogatory symbols, including swastikas and nooses, and egregious racial epithets. Most strikingly, Appellants allege that the Plant included an actual border "that the predominantly Black employees of Syncreon were prohibited from crossing, but that the predominantly White employees of Harley were permitted to cross at will." In other words, they allege the Black Syncreon employees were physically segregated from the predominately White Harley-Davidson employees. Such allegations exemplify unwelcome harassment to which Appellants allege they were subjected and satisfy the second element of a hostile work environment claim.

12

This unwelcome harassment was sufficiently alleged by Appellants to be motivated by their race, as required to meet the third element of a hostile work environment claim. Appellants allege that their race determined which bathrooms they could use and where they could go in the Plant. Further, the use of racial epithets and symbols that are racially derogatory demonstrate that the harassment Appellants suffered was motivated by their race. Notably, not only is it alleged that nooses were found on multiple occasions on the predominantly Black side of the Plant, but on one such occasion it is alleged a Black female doll was hanging from a noose, which Appellants allege was one of many racially charged incidents.

Finally, as required by the fourth element to a hostile work environment claim, Appellants must allege that a term, condition, or privilege of employment was affected by the harassment. Appellants may allege this "by showing a tangible employment action, or an abusive working environment." *McGaughy v. Laclede Gas Co.*, 604 S.W.3d 730, 748 (Mo. App. E.D. 2020). "Discriminatory harassment affects a term, condition, or privilege of employment if it is 'sufficiently severe or pervasive enough to alter the conditions of the plaintiff's employment and create an abusive working environment." *Id.* (quoting *Alhalabi v. Mo. Dep't of Nat. Res.*, 300 S.W.3d 518, 526 (Mo. App. E.D. 2009)). "In assessing the hostility of an environment, we look to the totality of the circumstances." *Eivins*, 636 S.W.3d at 179. In claims of hostile work environment, the discriminatory acts alone are not always significant events; instead, "the day-to-day harassment is primarily

significant, both as a legal and as a practical matter, in its cumulative effect." *Alhalabi*, 300 S.W.3d at 526.

As we explain under the third element, Appellants allege that their race determined which bathrooms they could use and where they could go in the Plant. This alone is sufficient to demonstrate that a term, condition, or privilege of their employment was affected. But not only do Appellants allege that they were required to use certain bathrooms, they also allege that those bathrooms were frequently defaced with racially-derogatory symbols, and that Respondents attempted to interfere with their attempts to document each instance. In fact, Appellants allege that "[a]n atmosphere of racial antagonism pervaded the Plant even when no racially charged incidents were taking place." Appellants allege that "Defendants treated Plaintiffs inequitably based upon their race and created an intimidating, hostile, or offensive working environment because of their race." Appellants buttress this with allegations that a Syncreon supervisor had been terminated by Harley-Davidson for "discriminating against Black employees" prior to his hire by Syncreon. Appellants allege they were exposed to "a continuous pattern of hostile work environment" based on incidents involving swastikas, nooses, and both written and verbal racial slurs that were not investigated, or tacitly supported, by Respondents. Appellants point out that they both subjectively perceived such treatment to be hostile and that a reasonable person would also consider such treatment hostile.

14

Harley-Davidson and Syncreon argue that Appellants' claim for hostile work environment should fail because they failed to allege that they subjectively perceived any harassment. They point out that none of the Appellants are named as having personally experienced any of the incidents of which they now complain. In doing so, however, both respondents argue for a more exacting pleading standard than is required in Missouri. The counts of the amended petition alleging claims on behalf of the Appellants expressly incorporate all of the amended petition's factual allegations concerning racially motivated incidents in the Plant. In addition, the amended petition explicitly alleges that Harley Davidson and Syncreon "subjected [the Appellants] to a continuous pattern of hostile work environment based on race discrimination," that this environment "was so pervasive or severe as to create a hostile work environment for each [Appellant]," and that this hostile work environment "unreasonably interfered" with each of the Appellants' work performance, affected their physiological and psychological well-being, and caused them damage. Appellants have sufficiently stated facts that, if true, would prove that they were exposed to a working environment that treated them differently – and worse – because of their race. Appellants do not need to be the direct target of each racially motivated incident alleged to have occurred in the Plant to subjectively perceive harassment from the negative working conditions. Appellants properly stated a claim for hostile work environment in Count XI.

**Race Discrimination**

We have previously explained the requirements for stating a claim for race discrimination under the MHRA:

> The MHRA prohibits an employer from discrimination against any individual with respect to her compensation, terms, conditions, or privileges of employment because of her race. Section 213.055.1(1)(a). Discrimination is "any unfair treatment" based on race as it relates to employment. Section 213.010(5); *Bram* [*v. AT&T Mobility Servs.*, 564 S.W. 787, 796 (Mo. App. W.D. 2018)]. To make a claim for racial discrimination, [Appellants were] required to show: (1) that [they] suffered an adverse employment action; (2) that [their] race was a [motivating][6] factor; and (3) that [they] were damaged as a result. *Bram*, 564 S.W.3d at 796.

*Clark v. AT&T Mobility Servs.*, 623 S.W.3d 197, 203 (Mo. App. W.D. 2021).

With regard to the first element, as we explain above, Appellants allege that they suffered an adverse employment action by being exposed to racially-motivated harassment at work, including but not limited to, being required to use separate bathrooms and separate working spaces from White employees. In Count IX for race discrimination, Appellants allege that "Defendants made the decision to treat Plaintiffs less favorably than White employees." Claims for both race discrimination and hostile work environment require Appellants to allege that their race was a motivating factor for the discrimination. For the same reasons we explain above, Appellants have sufficiently pled this element. As to the third and final element, Appellants also allege that they sustained damage as a result of this

---

[6] This Court in *Clark* was applying a prior version of the MHRA, which required that race be a "contributing" factor. The Missouri legislature adopted the "motivating" factor test in 2017 when it amended the MHRA. We apply the current version of the MHRA to this action because Appellants allege that they were subject to discrimination in 2019, after the MHRA was amended.

alleged discrimination, including but not limited to "emotional distress, humiliation, anxiety, dread, inconvenience, mental anguish, embarrassment, and deprivation of their civil rights." Such allegations properly plead claims for race discrimination.

Appellants have stated sufficient facts to survive a motion to dismiss on both their claims for race discrimination and hostile work environment. Accordingly, we reverse the trial court's dismissal of Counts IX and XI. Because the trial court dismissed Appellants' claims in Counts XII and XIII for aiding and abetting due to determining that Appellants had not properly stated a claim for discrimination (Count IX),[7] we reverse the dismissal of Counts XII and XIII as well. Having determined that Appellants met the threshold pleading requirements to state claims for race discrimination and hostile work environment, Appellants are also permitted to proceed on their claims for aiding and abetting against both Respondents.

---

[7] The trial court dismissed Appellants' Counts XII and XIII after Respondents sought clarification of the court's dismissal of Appellants' underlying discrimination claims. Respondents argued that Appellants could not proceed with their aiding and abetting claims without having underlying discrimination claims. The trial court dismissed Appellants' aiding and abetting claims without explanation, but we presume that the trial court accepted Respondents' arguments regarding dismissal of the aiding and abetting claims. *See Citizens for Preservation of Buehler Park v. City of Rolla*, 187 S.W.3d 359, 361 (Mo. App. S.D. 2006) (stating that, when a trial court grants a motion without stating its reasons for granting the motion, we presume the trial court acted for the reasons offered in the motion).

## Conclusion

We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.

18